**GLENMORE DISTILLERIES COM-
PANY, Petitioner,**

v.

**Emanuel SEIDEMAN and Louis Boor-
stein, Respondents.**

No. 66–C–427.

United States District Court
E. D. New York.

May 5, 1967.

**916**

Breed, Abbott & Morgan, New York City, for petitioner. Gerald J. Craugh, New York City, of counsel.

Samuel Kaufman, New York City, for respondents.

ZAVATT, Chief Judge.

This is a proceeding instituted by Glenmore Distilleries Company (hereinafter Glenmore) as judgment creditor of Dundee Wine & Spirits, Ltd. (hereinafter Dundee), pursuant to Fed.R.Civ. P. 69(a) and N.Y. CPLR § 5225(b), to reach moneys of the judgment debtor transferred by it to the respondents.

During the latter part of 1963, the respondents initiated discussions with Glenmore for the purpose of seeking to become a distributor of Glenmore products in the New York City area. Neither respondent had had any experience in any phase of the liquor business. Seideman's background of experience was in the textile business, in which his average annual earnings approximated $75,000 to $80,000. Boorstein was in the phonograph record business. They consulted with a Mr. Koerner, who had been employed by Park Benziger, a liquor distributor. Glenmore had rejected Park Benziger's application for a distributorship because the latter sought such a distributorship upon the condition that Glenmore guaranteed to it an annual profit of $150,000.

Several meetings were held with officers and representatives of Glenmore, attended by one or both of the respondents, at some of which meetings Koerner was in attendance. At some of these meetings there was speculative discussion as to the possible annual gross sales of Glenmore products by the respondents or by a corporation to be formed by them. The negotiations contemplated a distributorship which would deal primarily, if not exclusively, in Glenmore products. It was in the hope that the respondent's annual gross sales of Glenmore's products would approximate $1,-500,000 that Glenmore granted and the respondents accepted an oral distributorship. The respondents claim, but Glenmore denies, that there was discussion as to what would be a fair salary of each respondent, under the circumstances as contemplated. Respondents claim that

they apprised Glenmore of their intention to draw an annual salary of $25,000 each and that Glenmore agreed that such salaries would be modest. The court finds that there was no such discussion and no such agreement.

On December 5, 1963, respondents caused the incorporation of Dundee, a New York corporation. They became, and still remain, its sole stockholders, officers and directors. Each respondent invested $50,000 in Dundee. On March 1, 1964, Dundee received from the State of New York a license to sell liquor. It employed the experienced Mr. Koerner at a weekly salary of $200 on the understanding that, "if things worked out well," his salary would be increased accordingly. As to the respondents, however, the minutes of the meeting of the directors of Dundee, held April 1, 1964,

report the adoption of the following resolution:

"RESOLVED, that effective March 1, 1964 the salaries of the President and Treasurer be fixed on the basis of $25,000. per year each."

The minute book of Dundee records no meeting of stockholders or of directors after that of April 1, 1964.

Dundee had a small organization, consisting of the two respondents, Mr. Koerner, three employees in the office, two warehousemen and approximately ten salesmen. The record does not indicate whether the salesmen were employed on a salary or merely on a commission basis. During the initial period of approximately six months March 2 to August 20, 1964, Glenmore sold its products to Dundee, on credit, as follows:

| | |
|---|---|
| Gross sales | $167,601.70 |
| Less returns | 49,870.33 |
| Net sales on credit | $117,731.37 |
| Paid on account | $29,531.28 |
| Misc. credits | 6,771.04 |
| | 36,302.32 |
| Unpaid balance | $ 81,429.05 |

After the indebtedness of Dundee to Glenmore had reached this substantial sum, Glenmore refused to make any further sales on credit and put Dundee on a cash basis. Dundee's federal income tax return for the period December 5, 1963 and ending November 30, 1964, reported a net loss of $108,094.81, including gross salaries of $9,000 to each of the respondents. Although Dundee is still in existence, it did not renew its license, sold all of its merchandise on hand and went out of business on February 28, 1965.

On September 11, 1964, Dundee instituted an action against Glenmore in this court (64–C–1089) claiming $500,000 damages for breach of the oral distributorship contract and an equal amount in quantum meruit. On November 10, 1964, Glenmore filed a general denial, counterclaimed in the sum of

$86,845.05 for goods sold and delivered and moved for summary judgment dismissing the complaint and for summary judgment on its counterclaim. On February 4, 1965, Judge Bartels granted Glenmore's motion to dismiss Dundee's claim for breach of contract; denied Glenmore's motion to dismiss Dundee's claim in quantum meruit and found that the sum of $81,072.96 was admittedly due by Dundee to Glenmore. Dundee Wine & Spirits, Ltd. v. Glenmore Distilleries Co., 238 F.Supp. 283 (E.D.N.Y.1965). Judgment in that amount in favor of Glenmore and against Dundee was entered May 24, 1965 and remains wholly unpaid. It is to enforce that judgment that Glenmore has instituted this proceeding against the respondents. Dundee's claim against Glenmore for $500,000 damages in quantum meruit is pending undetermined in this court.

It was subsequent to Judge Bartels said opinion that Dundee made substantial payments to the respondents as follows:

| Date 1965 | Seideman | Boorstein | Total |
|---|---|---|---|
| February 15 | $ 500.00 | $ 500.00 | $ 1,000.00 |
| February 19 | 13,000.00 | 13,000.00 | 26,000.00 |
| February 28 | 500.00 | 500.00 | 1,000.00 |
| March | 2,063.33 | 2,063.33 | 4,126.66 |
| April | 2,063.33 | 2,063.33 | 4,126.66 |
| | | TOTAL | $36,253.32 |

By February 28, 1965, Dundee had sold its merchandise, ceased paying rent, had gone out of business and had paid all of its creditors except Glenmore and a disputed amount due to its landlord. Its only asset was its bank balance with the Franklin National Bank in the following amounts:

| Date 1965 | Bank balance |
|---|---|
| January 29 | $25,137.02 |
| February 26 | 8,033.59 |
| March 31 | 15,981.80 |
| April 30 | 630.97 |
| May 28 overdrawn | 67.35 |

Dundee's payments to the respondents in February, March and April 1965, totaling $34,253.32, were made while Dundee was insolvent. Respondents' contention that Dundee was solvent because of its $500,000 claim pending against Glenmore is without merit. "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, § 271. Only assets with a present salable value are taken into consideration in determining insolvency under that law. Chase Nat'l Bank of City of New York v. United States Trust Co., 236 App.Div. 500, 260 N.Y.S. 40 (1st Dep't 1932), aff'd 262 N.Y. 557, 188 N.E. 63 (1933);

Ballantine v. Ferretti, 28 N.Y.S.2d 668 (Sup.Ct.1941). Dundee's claim against Glenmore, being only inchoate, uncertain, and contested, has no present value. Penn v. Grant, 244 F.2d 309 (9th Cir.), cert. denied, 355 U.S. 837, 78 S.Ct. 58, 2 L.Ed.2d 47 (1957). Nor is that claim a debt in favor of Dundee which is subject to levy under N.Y. CPLR § 5201, because it is not a cause of action which "is * * * to become due, certainly or upon demand * * *."

Sections 272, 273 and 273–a of the N.Y. Debtor and Creditor Law provide:

" § 272. Fair consideration

Fair consideration is given for property, or obligation,

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

"§ 273. Conveyances by insolvent

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

" § 273–a. Conveyances by defendants

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

■ Glenmore seeks to reach the transfers of moneys, totaling $34,253.32, made by Dundee to the respondents on and after February 19, 1965, as having been made without fair consideration and as fraudulent within sections 273 and 273–a of the N.Y. Debtor and Creditor Law. Respondents claim that these payments were made for fair consideration; that they were made to them for past due salaries earned; that Dundee paid these sums pursuant to Dundee's resolution of April 1, 1964. "It is common knowledge and experience that salaries of officers in an efficiently managed corporation must bear a reasonable relation not only to the services rendered but to the income of the business, both gross and net. 'Corporate directors and officials, in fixing their own salaries, must have some regard for the financial condition of the corporation.' Backus v. Finkelstein, D.C., 23 F.2d 531, 537." Baker v. Cohn, 42 N.Y.S.2d 159, 165 (Sup.Ct.1942), modified, 266 App.Div. 715, 40 N.Y.S.2d 623 (1st Dep't 1943), aff'd, 292 N.Y. 570, 54 N.E.2d 689 (1944); Stearns v. Dudley, 76 N.Y.S. 2d 106 (Sup.Ct.1947), aff'd, 274 App. Div. 1028, 86 N.Y.S.2d 478 (4th Dep't 1948). The compensation paid to a corporate officer must be in proportion to his ability, services and time devoted, corporate earnings and other relevant facts and circumstances. Stearns v. Dudley, supra, at 127. Although the respondents claim to have devoted full-time service to Dundee during the short period it was in business, Dundee sustained a net loss of approximately $180,000. Not until Dundee went out of business did it pay the respondents the alleged salary payments of $34,253.32. During the eleven months of its business activity (March 1964 through January 1965), Dundee paid each respondent, monthly, a salary based upon an annual salary of $12,000, i. e., $1,000 per month. Nothing in the record indicates that Dundee paid its expert, Koerner, any greater salary than his starting salary of $200 per week. Koerner's salary, it is recalled, was to depend upon the success of the venture. The court cannot find that payments of annual salaries of $25,000 to each respondent, under the circumstances, were made with fair consideration. Rather, the court finds that the payments under scrutiny were without fair conideration and are fraudulent as to Glenmore; that they were made when Dundee was insolvent and are fraudulent as to Glenmore; that the payments were fraudulent under sections 273 and 273–a of the N.Y. Debtor and Creditor Law. This is so regardless of any actual intent to defraud.

■ Glenmore also seeks to reach these funds under section 276 of the N.Y. Debtor and Creditor Law:

" § 276. Conveyance made with intent to defraud

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Under this section, actual intent, as distinguished from intent presumed in law, must be proved. Mere suspicion does not suffice. First Nat'l Bank of Batavia v. Frank, 1 A.D.2d 539, 151 N.Y.S.2d 596 (4th Dep't 1956), aff'd, 3 N.Y.2d 849, 851, 166 N.Y.S.2d 84, 144 N.E.2d 727 (1957); Bugeia v. Davis, 34 Misc.2d 276, 228 N.Y.S.2d 216 (Sup.Ct.1962); Lupia v. Lupia, 199 N.Y.S.2d 733 (Sup. Ct.1960). Fraudulent intent is a question of fact, not law. N.Y. Personal Property Law, McKinney's Consol.Laws, c. 41, § 37; Stanley v. Nat'l Union Bank, 115 N.Y. 122, 22 N.E. 29 (1889). Unless

there is sufficient proof of actual intent to defraud, a conveyance cannot be set aside under section 276 of the N.Y. Debtor and Creditor Law. Feist v. Druckerman, 70 F.2d 333 (2d Cir. 1934). The evidence adduced upon the hearing in this proceeding justifies only one reasonable inference, namely, that the transfers of moneys by these officers of Dundee to themselves were made with actual intent to defraud Glenmore.

 Section 276–a of the N.Y. Debtor and Creditor Law provides as follows:

"§ 276–a. Attorneys' fees in action or special proceeding to set aside a conveyance made with intent to defraud

In an action or special proceeding brought by a creditor * * * to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor * * * shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor * * * in such action or special proceeding, and the creditor * * * shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment. The fee so fixed shall be without prejudice to any agreement, express or implied, between the creditor * * * and his attorney with respect to the compensation of such attorney."

Having found that there was actual intent to defraud, the only question to be determined is the amount of the "reasonable attorney's fees."

Settle an order on or before fifteen (15) days from the date hereof setting aside the said payments by Dundee to the respondents in the aggregate sum of $34,253.32; directing the respondents to pay over to Glenmore the said moneys so transferred to them and providing for a hearing before the court to hear testimony as to the amount to be allowed to the petitioner for its attorney's fees in this proceeding.