JULIEN J. STUDLEY, INC., Appellant, v SAMUEL J. LEFRAK et al., Respondents.

Second Department, January 29, 1979

210

## APPEARANCES OF COUNSEL

*Shatzkin, Cooper, Labaton, Rudoff & Bandler (Alan E. Bandler* of counsel), for appellant.

*Rogers & Wells (Guy C. Quinlan, James V. Ryan, William R. Glendon* and *Donald F. Luke* of counsel), for respondents.

## OPINION OF THE COURT

HOPKINS, J. P.

The petitioner is a judgment creditor of Fifth Avenue Leasing Corp. and of Brazilia Leasing Corp.[1] Both judgment debtors were formed by the respondent Samuel J. Lefrak, who was their president and a director.

This proceeding was brought by the petitioner to reach property transferred to the respondents by the judgment debtors, under the claim that the respondent Samuel J. Lefrak had caused all of the assets of the judgment debtors to be conveyed without consideration and in fraud of their obligations to creditors (see CPLR 5225; cf. *Siemens & Halske GmbH. v Gres,* 32 AD2d 624; 6 Weinstein-Korn-Miller, NY Civ Prac, par 5525.17, p 52-376). After a nonjury trial, Trial Term dismissed the petition, finding that the judgment debtors had retained the petitioner under contracts as rental agent for buildings whose title was at one time held in the name of the judgment debtors, and that the judgments had been recovered by the petitioner for services rendered under the contracts. However, Trial Term further found that the judgment debtors had never been in possession of any assets and that they had held no more than bare legal title to the properties conveyed. Hence, Trial Term determined that the transfer of the corporate assets to the respondents was not in fraud of creditors; in addition, it was determined that the petitioner was barred from bringing this proceeding by a prior judgment in favor of the respondent Samuel J. Lefrak in litigation brought by the petitioner.

---

1. The petitioner obtained a judgment against Fifth Avenue in the sum of $579,696.87 on August 12, 1977, and against Brazilia in the sum of $74,957.95 on August 12, 1977.

■ ■ The order and judgment should be reversed and judgment granted in favor of the petitioner. Under the circumstances of this case, the transfer of assets was constructively fraudulent as to the petitioner and the judgment in the prior litigation did not preclude the petitioner from seeking relief in this proceeding, since the claims here presented were not the subjects of the prior litigation.

## I

Essentially, the claims of the petitioner reduced to judgment against the corporate judgment debtors have a common factual pattern. We state them briefly, because the judgments in favor of the petitioner irrefutably evince obligations owing to the petitioner by the corporate debtors. One corporation—Fifth Avenue—had acquired on February 5, 1968 the premises at 44 West 57th Street, New York City, on which a building was to be constructed. Samuel J. Lefrak had formed the corporation, was its president and a director, and controlled it. He had advanced the funds to Fifth Avenue by which the property was purchased. On February 7, 1968—two days after the purchase—Fifth Avenue transferred title of the property so obtained to Lefrak and the other respondents, although the deed was not recorded until April 1, 1968. In the meantime—on March 19, 1968—the petitioner executed with Fifth Avenue the renting agency contract out of which the judgment against Fifth Avenue sought to be enforced in this proceeding arose. A second parcel of property on 57th Street was both acquired by Fifth Avenue and conveyed to the respondents on May 1, 1969.

Brazilia, on the other hand, had made a lease with the owner of 137 West 56th Street, with an option to buy the premises, on March 22, 1968. On the same day, Brazilia entered into with the petitioner the renting agency contract out of which the judgment against Brazilia sought to be enforced in this proceeding arose. On June 11, 1968 Brazilia assigned all its property to a nominee of Samuel J. Lefrak, Carnegie East, Inc.[2]

The evidence at the trial established that all of the funds used by the two corporations in these transactions were supplied by Lefrak.

In the action brought by the petitioner against Fifth Ave-

---

2. Lefrak conceded at the trial that Carnegie East, Inc. was his nominee.

nue and Brazilia to recover on the contracts for services rendered, the petitioner also sued Lefrak on the theory that Lefrak was personally liable to the petitioner, since Fifth Avenue and Brazilia were his agents (cf. *Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652, 656-657). That cause of action against Lefrak was dismissed and the dismissal was affirmed by us *(Julien J. Studley, Inc. v Lefrak,* 62 AD2d 1180). It is this judgment which the respondents contend binds the petitioner, preventing it from pursuing the claims made in this proceeding.

This proceeding was brought pursuant to CPLR 5225 (subd [b]) to reach the property transferred to the respondents by the corporate debtors.[3] The petitioner argues that (1) the respondents took the properties transferred wholly subject to the claims of the creditors of the debtors, (2) it is not barred because the respondents furnished the funds by which the properties were acquired, and (3) the transfers of the properties were made without consideration and were therefore fraudulent.

## II

The questions raised by this appeal primarily pertain to the relationship between a corporation, its stockholders, officers and directors, and its creditors. At one time a corporation was statutorily banned from transferring any of its property to an officer, director or stockholder, if it had refused to pay its obligations, except on receipt of full value in cash; nor could a corporation grant a preference to a creditor while insolvent (former Stock Corporation Law, § 15, repealed eff Sept. 1, 1963 [L 1961, ch 855; L 1963, ch 692]). When the Stock Corporation Law was repealed and replaced by the Business Corporation Law, that statutory provision was not re-enacted, since, as one commentator put it, "[it] has become superfluous because the offense is already 'adequately covered' in the Debtor and Creditor Law (in this respect enacting the Uniform Fraudu-

---

3. CPLR 5225 (subd [b]) reads as follows: "Property not in the possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment to the judgment creditor".

lent Conveyance Act) and in the Bankruptcy Act" (Hornstein, Analysis of Business Corporation Law, McKinney's Cons Laws of NY, Book 6, Business Corporation Law, Appendix 1, p 469).

The Debtor and Creditor Law applies to individual and corporate debtors alike. In general terms, the statute condemns as fraudulent a conveyance made without consideration by a debtor who is thus rendered insolvent (Debtor and Creditor Law, § 273). Similarly, the statute condemns as fraudulent a conveyance made without fair consideration when the transferor is engaged or about to engage in a business or transaction for which the remaining property in his hands is an unreasonably small capital as to persons who become creditors during the continuance of the business or transaction (Debtor and Creditor Law, § 274). In each instance, the conveyance is vulnerable to attack by a creditor without regard to the actual intent of the transferor—that is, the transfer is considered to have been made in constructive fraud of the creditor (cf. *Berlenbach v Bischoff,* 137 Misc 719, affd 231 App Div 734).

The statute provides that "fair consideration" exists "[w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied", or "[w]hen such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained" (Debtor and Creditor Law, § 272). Here, again, we note that the good faith of both transferor and transferee is stressed as an indispensable condition in the definition of fair consideration under either branch of the statutory language.

■ Apart from the Debtor and Creditor Law, the fiduciary nature of the relation between a corporation and its stockholders, directors and officers imposes a duty toward creditors of the corporation. The assets of a corporation constitute a trust fund for the benefit of corporate creditors (11 NY Jur, Corporations, § 157, p 321), and the dealings of a dominant stockholder with the corporation are subjected to close examination *(Pepper v Litton,* 308 US 295; cf. *Cross v Beguelin,* 252 NY 262; *Darcy v Brooklyn & N. Y. Ferry Co.,* 196 NY 99). A transfer of all the assets of a corporation to a sole stockholder or to a corporation controlled by the stockholder may be set aside when made in derogation of the rights of creditors *(Grad v Roberts,* 14 NY2d 70, 76; *Cole v Millerton Iron Co.,* 133 NY

164, 168). A transferee receiving corporate assets with knowledge of the diversion is liable as a constructive trustee *(Geddes Sav. & Loan Assn. v Malvasi,* 60 Misc 2d 1053; cf. Debtor and Creditor Law, §§ 278, 279).

Under the statute a creditor has standing to maintain an action to set aside a fraudulent transfer, though his debt may not have been in existence at the time of the transfer (see, e.g., *Young v Heermans,* 66 NY 374; *Williams & Co. v Euhler,* 222 App Div 561; *Matter of Rosenfield,* 213 NYS2d 1009, 1015, affd 18 AD2d 718).

### III

■ Against this background we view the arguments of the parties. From the circumstances it is clear that Lefrak was the dominant figure in the transactions before us. He was the president of the corporation and controlled their destinies; he made the contracts as president on behalf of the corporation with the petitioner. The contracts between Fifth Avenue and the petitioner thus executed by Lefrak significantly provided that in the event of a transfer of title to the premises owned by Fifth Avenue—the subject of the contract—Fifth Avenue would cause the transferee to assume its obligations to the petitioner. Lefrak and the respondents, in short, were fully aware of Fifth Avenue's obligations under the contract when they accepted the transfer of all the assets of the corporation.

Their knowledge of the contract, and even more important, their participation in the making of the contract, renders disingenuous the respondents' contention that in the case of Fifth Avenue, the transfer of the assets occurred before the execution of the contract with the petitioner, and thus beyond the petitioner's range. Though the deed was dated approximately a month and a half before the contract, it was not recorded until some two weeks after the contract.[4] We can hardly suppose that the petitioner would knowingly engage to serve as rental agent for a corporation which did not own the property to be leased under the terms of the agreement; and the contract itself imports an implicit representation by Fifth Avenue and Lefrak, its officer, that Fifth Avenue was the owner of the property. In the case of Brazilia, the contract

---

4. We note, too, that the transfer of the second parcel in the name of Fifth Avenue was made to the respondents on May 1, 1969, more than a year after the contract with the petitioner.

was executed before the transfer of all its assets, so that the issue of creditor standing would not arise in any event.

The respondents contend that the transfer of the corporate assets to themselves was legitimate as against the rights of creditors, since Lefrak was the sole source of the funds by which the corporations had acquired the assets. We think that it makes little difference in the analysis of the transactions whether Lefrak's financial assistance to the corporation was in the role of stockholder—by the investment of capital—or as a creditor—by the advance of a loan. Lefrak could not in either capacity withdraw the capital of the corporation, or prefer himself as a creditor, to the detriment of a creditor who was dealing with the corporations on the strength of a representation, express or implicit, that the corporations owned the properties, the value of which was to be enhanced by the work which the creditor performed.

In effect, Lefrak's claim is that the corporations held but a naked legal title to the properties and that he was the equitable owner of the properties. But at the same time as beneficiary of this species of equitable trust, he could not encourage the rendition of services or credit to the trustee by the petitioner who had no way of knowing that the corporate assets were encumbered by a secret trust (see *Fritz v Worden,* 20 App Div 241, 243; *Shand v Hanley,* 71 NY 319, 321-322; 5 Scott, Trusts [3d ed], § 459, p 3402; 4 Scott, Trusts [3d ed], § 313, pp 2486, 2490). Here it must be again observed that under the Debtor and Creditor Law all transfers must rest on fair consideration (Debtor and Creditor Law, §§ 273, 274, 275) and fair consideration, even for an antecedent debt, requires the transfer to be made in good faith (Debtor and Creditor Law, § 272). The manipulation of corporate assets by the respondents in the face of the petitioner's rights by preferring the interests of those in control of the corporation reflects bad faith and deprives the respondents of the status of transferees for fair consideration. The transfers stripped the corporations of their assets, rendering them insolvent (see Debtor and Creditor Law, § 273); they took place when the corporations were ostensibly engaged in business, leaving them an unreasonably small capital (see Debtor and Creditor Law, § 274); and they were made when the corporations knew that debts

would be incurred beyond their ability to pay as the debts matured (see Debtor and Creditor Law, § 275).[5]

The respondents' claim superficially assumes the form of a resulting trust, abolished in New York by the Revised Statutes (*Reitz v Reitz,* 80 NY 538, 542-543; *Fagan v Mc-Donnell,* 115 App Div 89, affd 191 NY 515). In truth, the form of the transaction cannot be a resulting trust, as the resulting trust was designed in its origin to protect the beneficiary from his creditors, rather than, as here, to protect the trusteee from his creditors (cf. EPTL 7-1.3). Nevertheless, we do not think that the creditors of the trustee can be balked of payment by the contrivance of the beneficiary.

In *Fraw Realty Co. v Natanson* (261 NY 396), a somewhat similar claim was made by the two stockholders of a corporation indebted to the plaintiff. Two brothers were the sole stockholders of Normar Corporation and Malex Corporation. The brothers caused the conveyance of title to real property to Malex, even though the down payment was made by Normar. A bond and mortgage executed by Malex as part of the purchase price fell into default and foreclosure resulted in a deficiency judgment against Malex. When the mortgagee sought to execute on the judgment, it found that Malex had conveyed all of its assets to Normar. It was conceded that the transfer was made without consideration and had stripped Malex of its assets. The defense was that Normar had been in truth the real owner of the property, that Malex held the legal title for its benefit and that, consequently, the transfer operated simply to convey to the true owner the naked legal title. The Court of Appeals held that the transfer was void, saying (*supra,* pp 404-405): "We cannot perceive, however, that the seizure was lawful, or other than an illegal diversion of funds. True, the Natansons were the sole stockholders in both corporations, but they were not the sole parties interested. Malex, at the time, was heavily indebted upon purchase money bonds, in the instance of this plaintiff upon a bond which finally produced a deficiency judgment for more than $80,000. Under the circumstances, surely Normar had no right to appropriate the rentals. Yet, upon that appropriation it builds its claim that Malex was its dummy, and that Malex,

---

5. A close parallel to the transfers made by the corporations here are those transfers invalidated by the statute made by partnerships (Debtor and Creditor Law, § 277). The provision condemns a conveyance of partnership property to a partner, without regard to fair consideration.

having permitted Normar so to treat it, thereby acknowledged that it held the properties acquired in trust for Normar. We were not aware that the use of the epithet 'dummy' could have so magical an effect."

We hold, therefore, that the petitioner is entitled to reach the corporate assets transferred, unless, as urged by the respondents, their rights have been concluded by the judgment in the prior litigation between the petitioner and Lefrak.

## IV

We lay aside the point that the respondents in this appeal, other than Lefrak, were not parties in the prior litigation, since it appears evident that Lefrak's interests were paramount and that he directed the transfer to them in partial satisfaction of his interests. In justice, if the doctrine of *res judicata* applies, it should apply on behalf of all the respondents, because they hold their interests through Lefrak.

*Res judicata* generally bars a subsequent action between the same parties, litigating in the same capacity on the same cause of action *(Lipkind v Ward,* 256 App Div 74). The prior litigation established the debts owing to the petitioner from the corporations and determined that Lefrak was not liable for those debts on the grounds that the corporations were not his agents and the corporate veils could not be penetrated.

In this litigation the enforcement of the judgments against corporate assets is the issue, and Lefrak is sued because he is one of the transferees of those corporate assets. Hence, the gist of the two litigations is not the same and, clearly, the claims of the parties rest on different aspects of the transactions between the corporations and Lefrak. Though in the first litigation the petitioner might have sought to establish its debt and set aside the transfer at once *(American Sur. Co. of N. Y. v Conner,* 251 NY 1), it chose not to do so, and it may not be faulted for the choice. The judgment in this litigation will not "destroy or impair rights or interests established by the first" *(Schuylkill Fuel Corp. v Nieberg Realty Corp.,* 250 NY 304, 307).

Nor does the effect of collateral estoppel bar the petitioner's claim. No fact was determined in the prior litigation which prevents the petitioner from pursuing its rights under the judgments; neither was the issue here presented determined (cf. *Hinchey v Sellers,* 7 NY2d 287, 293; *Karameros v Luther,*

279 NY 87). That the prior action held that Lefrak was not personally liable for the debts does not preclude a finding that he is a constructive trustee for the benefit of the petitioner as a transferee in bad faith of corporate assets (see *Matter of Reilly v Reid,* 45 NY2d 24, 29-31).

V

Thus, we reach the conclusion that the petitioner's rights, in the language of the statute (CPLR 5225), are superior to the respondents' with respect to the property transferred, and that the petitioner is entitled to the relief requested in this proceeding. Accordingly, the order and judgment of Trial Term should be reversed and judgment directed in favor of the petitioner.

DAMIANI, GULOTTA and MARTUSCELLO, JJ., concur.

Order and judgment of the Supreme Court, Queens County, entered May 8, 1978 and May 16, 1978, respectively, reversed, on the law, with costs, judgment is granted in favor of the petitioner, and the proceeding is remitted to Trial Term for entry of an appropriate judgment.