UNITED STATES of America, Plaintiff,

v.

RED STRIPE, INC., f/k/a Asher Bros., Inc. and George Asher, Defendants.

No. CV 89–3504.

United States District Court, E.D. New York.

March 20, 1992.

Department of Justice Tax Div., Washington, D.C. (Philip Karter and Andrew D. Plepler, of counsel), for plaintiff.

Kostelanetz, Rithoz, Tigue & Fink, New York City (James C. Sherwood, of counsel), for defendants.

1. Although we refer to the company as Red Stripe, it was known as Asher Bros, until August

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

The United States of America ("Government"), claims that defendant Red Stripe, Inc. formerly known as Asher Bros., Inc. ("hereinafter referred to as "Red Stripe") [1], has to pay federal corporate income taxes for the fiscal years ending June 30, 1975, 1976, 1977, 1978 and 1979 and seeks to reduce to judgment the corporate income taxes due from Red Stripe, Inc.

The Government also maintains that the transfer of Red Stripe's assets to its sole stockholder, defendant George Asher ("Asher"), was a fraudulent conveyance. Plaintiff seeks to reduce to judgment Asher's tax liability as a transferee for the unpaid taxes on investments in four limited partnerships for the tax years 1975, 1976 and 1977.

The issues were tried to the court.

Red Stripe was a New York corporation with its principal place of business in New Hyde Park, New York. Defendant George Asher, who currently resides in Hollywood Florida, lived in Great Neck, New York, during the time of the events complained of.

## LIABILITY FOR TAX YEARS 1975, 1976 AND 1977

For the tax years ending in 1975, 1976 and 1977, Red Stripe filed income tax returns which claimed tax reductions and investment credits relating to its investment in four limited partnerships, i.e., Brighton Associates, Plaza Group, Sunny Hill Associates and Road Group.

On September 30, 1983, the Internal Revenue Service ("I.R.S.") and Red Stripe entered into an agreement, pursuant to I.R.C. § 7121(b), stipulating that Red Stripe made improper tax deductions and investment credits on its tax returns for the taxable years of 1975, 1976, and 1977, in relation to

1, 1979.

its investment in the four limited partnerships. Red Stripe also agreed to extend the time within which an assessment could be made to December 31, 1983.

On October 20, 1983, the I.R.S. assessed deficiencies of $11,980.00 for the taxable year of 1975, $47,166.00 for the tax year 1976 and $198,848.00 for the tax year of 1977. This did not include the statutory rate of interest.

Red Stripe claims that it is not responsible for these taxes. It maintains that these debts were assumed by the Beatrice Food Corporation ("Beatrice"), when Beatrice purchased Red Stripe from Mr. Asher, in exchange for 180,000 shares of Beatrice common stock, in August, 1979.

The Beatrice stock that was transferred to Red Stripe was valued at $3,982,500 or $22.125 per share. The parties intended the transaction to qualify as a tax free reorganization pursuant to I.R.C. § 368(a)(1)(C). After the reorganization, which occurred in August 1979, Red Stripe ceased to function as an operating business.

Pursuant to the Agreement and Plan of Reorganization ("Agreement") between Beatrice and Red Stripe, it is unclear whether Beatrice agreed to assume some, or all, of Red Stripe's tax liabilities. For the most part, the Agreement appears to state that Beatrice did not agree to assume the tax liability for Red Stripe's limited partnership investments.

Section 1.02 of the Agreement states in pertinent part that Beatrice did not acquire:

"the assets reflected on the Company Balance sheet under the caption 'Deferred Credits—Partnership interest and other' (including the limited partnership interests of the Company in The Road Group, The Plaza Group, Brighton Associates and Sunny Hill Associates...."

Section 1.03 of the Agreement states that Beatrice would not assume any:

"liability or obligation ... in connection with or relating to any of the Retained Company Assets (including the limited partnership agreements referred to in Paragraph 8(d) of the Company letter." [2]

The Agreement states in section 1.04(a) that:

Beatrice shall not be responsible for, and shall not assume or undertake to pay, perform, satisfy or discharge, any liability or obligation of the Company or the Company Liabilities and Obligations.

1.04(b) states:

The company and/or the Company Shareholder, as the case may be, shall remain responsible for the Retained Company liabilities and obligations.

However, Exhibit G, the Assumption Agreement and Undertaking, states on page 2 that Beatrice agrees to assume the "liabilities and obligations of the Company (Red Stripe) for federal and state income taxes referred to in paragraph 11 of the Company Letter...."

Paragraph 11, § (c) of the Company Letter states:

The Company has waived the statute of limitations with respect to the assessment of federal income taxes relating to the limited partnership interests of the Company in The Road Group, The Plaza Group, Brighton Associates and Sunny Hill Associates.

The Assumption Agreement and Undertaking appears to state that Beatrice would be responsible for the tax liabilities on the limited partnerships. In contrast, the Agreement and Plan of Reorganization states that Red Stripe would be responsible for the taxes. We do not attempt to construe the intent of the contracting parties because, as discussed below, the Assumption Agreement has no effect on Red Stripe's tax liability.

All of Red Stripe's operating assets, except for a sailboat valued at roughly $27,000, a condominium valued at approximately $100,000 and an interest in worthless limited partnership tax shelters, were transferred to Beatrice. One month after

---

**2.** Paragraph 8(d) of the Company letter makes reference to the four limited partnership interests that were retained by Red Stripe.

the reorganization, 153,000 Beatrice stock shares were transferred to Asher. Shortly thereafter, the condominium and sailboat were conveyed to Asher. Over the next year, the remaining 27,000 shares of Beatrice stock were released from escrow and transferred to Asher.

In exchange for the transfer of Beatrice stock, Asher redeemed all of his stock in Red Stripe. However, his Red Stripe stock retained little, if any value, because the corporation's only valuable asset, the Beatrice stock, had already been transferred out of the corporation, to its sole stockholder.

## DISCUSSION

■ Defendants claim that they are not responsible for the tax liability incurred between 1975–1977 because the government's complaint was not filed within six years of the underlying assessment.[3] We find this argument to be without merit.

The Government has produced a Certificate of Assessments and Payments ("Certificate") which states that an assessment for the tax years 1975, 1976, and 1977 was made on October 20, 1983. The Government's complaint was filed exactly six years later, on October 20, 1989.

Defendants argue that the assessment of tax for the years in question occurred not on October 20, 1983, but rather on or before October 3, 1983. To support this contention, defendant's refer to a letter written by Diane R. Mirabito, an IRS attorney, ("Mirabito letter") directed to Red Stripe's former counsel, Bernard Segal, Esq. (Exhibit C). The letter states in pertinent part that "[o]n October 3, 1983 the Internal Revenue Service filed Notices of Federal Tax Lien against Red Stripe, Inc. in the amounts of $22,541.45, $86,570.14, and $349,508.14 for the fiscal years ended June 30, 1975, June 30, 1976, and June 30, 1976, and June 30, 1978, respectively."

Since an assessment is a necessary prerequisite to the issuance of a tax lien[4], which the letter states was filed on October 3, 1983, defendant maintains that "an assessment must have been issued on that date or earlier." (Defendant's Post–Trial Memo. at 6).

■ "Statutes of limitation barring the collection of taxes must receive a strict construction in favor of the government." *Loewer Realty Co. v. Anderson*, 31 F.2d 268, 269 (2d Cir.), *cert. denied*, 280 U.S. 558, 50 S.Ct. 17, 74 L.Ed. 613 (1929); *Kahn v. United States*, 444 F.Supp. 388, 392 (S.D.N.Y.1977), *aff'd* 590 F.2d 48 (2d Cir. 1978).

■ While defendants dispute the date contained in the Certificate, a Certificate is presumptive proof of a valid assessment.[5] *United States v. Lorson Electric Co., Inc.*, 480 F.2d 554 (2d Cir.1973); *United States v. Chila*, 871 F.2d 1015 (11th Cir.1989). The date of assessment found in the certificate is also presumptively valid. *Brewer v. U.S.*, 764 F.Supp. 309, 315–16 (S.D.N.Y. 1991); *United States v. Nuttall*, 713 F.Supp. 132, 137 n. 8 (D.Del.), *aff'd*, 893 F.2d 1332 (3d Cir.1989); *United States v. Dixon* 672 F.Supp. 503, 505–06 (M.D.Ala. 1987), *aff'd*, 849 F.2d 1478 (11th Cir.1988) (per curiam); *United States v. Posner*, 405 F.Supp. 934 (D.Md.1975).

This presumption places the burden on the taxpayer to demonstrate by a preponderance of the evidence that the date of assessment is incorrect. *Schaffer v. C.I.R.*, 779 F.2d 849, 857 (2d Cir.1985); *United States v. Lease*, 346 F.2d 696, 700 (2d Cir. 1965); *United States v. Paladin*, 539 F.Supp. 100, 102 (W.D.N.Y.1982). *See also United States v. Strebler*, 313 F.2d 402, 403–04 (8th Cir.1963):

> At the trial of the case at bar the Government introduced evidence by way of a "Certificate of Assessment" which

---

**3.** I.R.C. § 6502(a)(1) states that an action to collect taxes must commence within 6 years after assessment of the tax.

**4.** *See In re Carlson*, 580 F.2d 1365, 1368 (10th Cir.1978); *U.S. v. Mitchell*, 349 F.2d 94, 99 (5th Cir.1965).

**5.** "In general, courts will not look behind an assessment to evaluate the procedure and evidence used in making the assessment." *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987).

revealed appellee's liability for the amount of taxes claimed. The law is that such assessment is presumptively correct; and the "burden is on the taxpayer to overcome this presumption" by countervailing proof. (citations omitted).

The Mirabito letter is not entitled to the same presumption of validity as the Certificate. *See Herbert v. U.S.*, 662 F.Supp. 573, 583 (S.D.N.Y.1987), (citing *Heckler v. Community Health Services*, 467 U.S. 51, 59–61, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984) and *Schweiker v. Hansen*, 450 U.S. 785, 788–89, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (per curiam)), *rev'd on other grounds*, 850 F.2d 32 (2d Cir.1988) (The government is not "bound by a position taken ... by one of its employees or agents.")[6]; *Louderback v. United States*, 500 F.Supp. 575, 579 (D.Colo.1980) ("[A]n Internal Revenue Service agent does not have authority to make a final determination binding on the government....").

Admittedly, the Certificate and the Mirabito letter both fail to provide the underlying documents which would firmly reveal the date of assessment. The Mirabito letter concludes that a lien was filed on October 3, 1983, but does not provide any recorded evidence to support this contention. As noted above, the government is not required to produce the documents underlying the assessment because the Certificate is presumptively valid.

■ In order to rebut the presumption in favor of the Government, defendants must present more than a mere conclusory statement signed by an I.R.S. attorney, whose actions do not bind the government. Since the Government has millions of taxpayers to oversee, it was Asher who was in the best position to know when he received the assessment.

We find that the assessment was made on October 20, 1983 and the government's claim relating to defendant's tax liability from 1975–1977 was filed within the six year statutory limit.

■ We also find that the transfer of Beatrice stock from Red Stripe to Asher was a fraudulent conveyance under section 273 of New York's Debtor and Creditor law.

DCL § 273 states:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

In the case at bar, the transfer of Beatrice Stock from Red Stripe to Asher was without "fair consideration" and rendered Red Stripe insolvent.

DCL § 271 states:

[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

When a transfer is made without consideration[7], the defendants have the burden of proving solvency. *ACLI Government Securities, Inc. v. Rhoades*, 653 F.Supp. 1388, 1393 (S.D.N.Y.1987), *aff'd*, 842 F.2d 1287 (2d Cir.1988); *In re O.P.M. Leasing Services, Inc.*, 40 B.R. 380, 392 (Bankr. S.D.N.Y.), *aff'd*, 44 B.R. 1023 (S.D.N.Y. 1984); *aff'd*, 769 F.2d 911 (2d Cir.1985).

Red Stripe's federal tax liability had accrued at the time of the transaction with Beatrice. Therefore the conveyance from Red Stripe to Asher was made when Red stripe was indebted to the Government. By removing Red Stripe's chief asset, the Beatrice stock, it left Red Stripe without the means to pay its debts and rendered it insolvent pursuant to New York's Debtor and Creditor law.

■ Asher argues that Red Stripe never was insolvent because the taxes on the

---

**6.** Although the cited Supreme Court cases deal with the issue of estoppel, they stand for the general proposition that the government is not bound by the statements or actions of its employees.

**7.** See pages 1343–1344 *infra*.

limited partnerships had not been assessed when he received the Beatrice stock. Although the actual assessment had not been made, Asher testified that he was aware that the I.R.S. had made inquiries about the limited partnership investments and he even signed numerous waivers of the statute of limitations so that the I.R.S. could audit the transactions. (Tr. at 183–84). Moreover, a creditor has standing to maintain an action to set aside a fraudulent conveyance, even if the debt was not in existence at the time of the transfer. *See Studley v. Lefrak,* 66 A.D.2d 208, 412 N.Y.S.2d 901, 905 (2d Dep't) *aff'd,* 48 N.Y.2d 954, 425 N.Y.S.2d 65, 425 N.Y.S.2d 65 (1979) (and cases cited therein).

Defendants also claim that Red Stripe was solvent because the Agreement between Beatrice and Red Stripe provided that Beatrice would assume Red Stripe's tax liabilities for the limited partnerships. Red Stripe is the primary obligor of the tax liabilities. It cannot avoid the obligation to pay federal income taxes through an agreement providing that a third party assumed that obligation. If Red Stripe acquired a right of action against Beatrice, it is free to exercise any potential right to indemnification in a separate proceeding.

■ Even if we accept defendants' argument that Beatrice agreed to assume the tax liabilities on the limited partnerships, its breach of contract claim against Beatrice cannot be considered a corporate asset for purposes of determining its solvency. "Only assets with a present salable value are taken into consideration in determining insolvency.…" *Glenmore Distilleries v. Seideman,* 267 F.Supp. 915, 918 (E.D.N.Y. 1967). Claims that are "inchoate, uncertain, and contested" have no present value and cannot be considered an asset of the company. *Glenmore Distilleries* at 918; *See also ACLI Government Securities, Inc.* at 1394.

Not only did the stock transfer render Red Stripe insolvent but it was also without "fair consideration." Fair consideration is defined in DCL § 272:

Fair consideration is given for the property or obligation;

(a) When in exchange for such property, or obligation, as a fair equivalent thereof, and in good faith, property is conveyed as an antecedent debt is satisfied, or

(b) When such property, or obligation received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property, or obligation obtained.

■ Asher testified that the consideration he gave to Red Stripe in return for the Beatrice stock was merely a promise to provide future personal services to Red Stripe by way of enforcing Red Stripe's rights against Beatrice.[8] This does not satisfy the requirements of DCL § 272 because promises to provide future services are insufficient to serve as adequate consideration under New York's Debtor and Creditor Law. *Orbach v. Pappa,* 482 F.Supp. 117, 120 (S.D.N.Y.1979); *Kleinfeld v. Pedersen,* 116 A.D.2d 970, 498 N.Y.S.2d 596, 597 (4th Dep't 1986); *Schmitt v. Morgan,* 98 A.D.2d 934, 471 N.Y.S.2d 365, 367 (3d Dep't 1983).

■ Assuming arguendo that Asher was able to establish that his services to the corporation was fairly equivalent to the transfer of Beatrice stock, we find that the transfer of stock from Red Stripe to Asher was not made in accordance with the good faith requirements of DCL § 272. "It has been held that preferential transfers to directors, officers and shareholders of insolvent corporations in derogation of the rights of general creditors do not fulfill the good faith requirement of the Debtor and Creditor Law." *Farm Stores, Inc. v. School Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d 374, 378 (2d Dept.1984), *aff'd,* 64 N.Y.2d 1065, 489 N.Y.S.2d 877, 479 N.E.2d 222 (1985).

---

**8.** Since Asher stated that Red Stripe ceased to be a going business concern after the deal was commenced, it is difficult to conceive how Asher intended to provide any services to the corporation.

In support of this proposition, *Farm Stores* cited *Southern Industries v. Jeremias,* 66 A.D.2d 178, 185, 411 N.Y.S.2d 945 (1978), which stated:

"Whether it be upon the theory that directors of insolvent corporations are trustees for the benefit of all creditors, or upon the theory that it would be inequitable to allow directors to use inside information and their controlling voice in corporate affairs to benefit themselves over the claims of others, the common law forbids preferences to directors of insolvent corporations as being contrary to principles of fair, honest and open dealing ... Accordingly, the transfer in this case is void because, although made for a fair consideration, it was not made in good faith."

*Accord Studley,* 412 N.Y.S.2d at 906. ("The manipulation of corporate assets by the respondents in the face of the petitioner's rights by preferring the interests of those in control of the corporation reflects bad faith and deprives the respondents of the status of transferees for fair consideration.").

Defendants also argue, by way of the "Step analysis" doctrine, that Asher gave "fair consideration" for the conveyance of Beatrice Stock. We find that this argument borders on the frivolous.

■ "Step-analysis" is a doctrine of tax collection which postulates that a transaction should be viewed as a whole, rather than in separate parts. *See Minnesota Tea Co. v. Helvering,* 302 U.S. 609, 613, 58 S.Ct. 393, 395, 82 L.Ed. 474 (1938). In *The South Bay Corp. v. Comm'r,* 345 F.2d 698, 705 (2d Cir.1965), the court stated that the "Step-analysis" doctrine "compar[es] ... the situation as it existed before the first step of the transaction with the situation existing after the last step of the transaction...."

Defendants maintain that the transfer of stock to Asher was not a fraudulent conveyance because the Government has con-

centrated on only on the transfer of the Beatrice stock. The other step of the transaction, which defendant asserts constitutes "fair consideration," was the fact that in exchange for the Beatrice Stock, Asher gave up his interest in Red Stripe.

However, it was not Asher who exchanged his personal assets for the Beatrice stock, but rather his corporation, Red Stripe. There is no contention that the transaction between Red Stripe and Beatrice was without "fair consideration." The crux of the fraudulent conveyance claim is that the transaction between Red Stripe and Asher was without "fair consideration." It appears that defendants themselves have neglected to analyze a "step" of the transaction.

We find that the transfer of Beatrice stock from Red Stripe to Asher was without "fair consideration" and rendered Red Stripe insolvent. The transfer of Beatrice stock to Asher was a fraudulent conveyance under DCL § 273.[9]

The Government, as the creditor, is entitled to judgment pursuant to DCL § 278, which states in pertinent part:

1. Where a conveyance ... is fraudulent as to a creditor, such creditor ... may ...

a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim....

■ When a conveyance is fraudulent under DCL § 273, the "creditor may obtain judgment against any transferee to whom his debtor has transferred the property up to the value of the property...." *De West Realty Corp. v. Internal Revenue Service of the United States,* 418 F.Supp. 1274, 1279 (S.D.N.Y.1976); *See also In re Swan–Finch Corp.,* 279 F.Supp. 386, 391 (S.D.N.Y.1967); *Brown v. Kimmel,* 68 A.D.2d 896, 414 N.Y.S.2d 226, 227 (2d Dep't 1979); *Gruenbaum v. Lissauer,* 185 Misc. 718, 730, 57 N.Y.S.2d 137, 145 (Sup.Ct. N.Y.Co.1945) *aff'd,* 270 App.Div. 836, 61 N.Y.S.2d 372 (1st Dep't 1946).

---

9. We do not reach the question of whether to impose a constructive trust because, as the government states in its post-trial brief, "[t]here is ... no practical distinction between the

Government's constructive trust claim and its fraudulent conveyance claim." (Plaintiff's Post-Trial Memo. at 23.).

Asher is liable to the Government for its damages, in the form of taxes and interest to the extent of the assets received from Red Stripe.

■ The Government is also entitled to receive a "failure to pay" penalty from defendants pursuant to I.R.C. § 6651(a)(2).

I.R.C. § 6651(a)(2) states in pertinent part:

(a) Addition to the Tax—In case of failure ...

(2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof, during which such failure continues, not exceeding 25 percent in the aggregate.

Defendants claim that a penalty is improper because their failure to pay was based on "reasonable cause." The burden of proving "reasonable cause" is on the taxpayer. *Parkchester Beach Club Corp. v. Comm'r*, 335 F.2d 478, 481 (2d Cir.1964); *Baasch v. U.S.*, 742 F.Supp. 65, 69 (E.D.N.Y.1990); *aff'd*, 930 F.2d 911 (2d Cir. 1991).

■ "To demonstrate 'reasonable cause,' a taxpayer must show that he exercised 'ordinary business care and prudence.'" *Denenburg v. United States*, 920 F.2d 301, 303 (5th Cir.1991) quoting Treas. Reg. § 301.6651–1(c)(1) (as amended 1973). "'[R]easonable cause' is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken." *United States v. Boyle*, 469 U.S. 241, 250, 105 S.Ct. 687, 692, 83 L.Ed.2d 622 (1985). Asher testified that his failure to pay was based on the advice of both his attorney and accountant that the tax liability would be assumed by Beatrice.

We find that Asher did not exercise "ordinary business care and prudence" when he relied on the advice of his tax advisors. While defendants cite to the Supreme Court's decision in *Boyle, supra* 469 U.S. at 250, 105 S.Ct. at 692, for the proposition that "reasonable cause" is established when a taxpayer relies on the advice of an attorney or an accountant concerning a question of law, the taxpayer must demonstrate that such reliance is reasonable.

Even the most generous reading of the Red Stripe–Beatrice assumption agreements reveal that it is unclear whether Beatrice agreed to assume the tax obligations in question. Asher, who claimed to be familiar with the assumption agreements, had to recognize that the tax assumption sections of the contracts were in conflict.

One's duty to pay taxes cannot be circumvented merely by alleging that another party is contractually obligated to fulfill those responsibilities. Asher's lack of "ordinary business care and prudence" cannot be salvaged by claiming that he relied on the advice of his attorneys and accountants. A reasonably prudent businessperson would not have relied on the advice of his lawyer and accountant that an assumption of the tax liability by a third party would release him, as the taxpayer, from the payment of income taxes due the Government.

Defendants also argue that "reasonable cause" has been established because I.R.S. agents allegedly instructed him, during a meeting held in 1985, not to pay his taxes. This argument is without merit. Even if the agents had instructed Asher not to pay his taxes, the government cannot be estopped by the misinformation given by its employees. *Heckler v. Community Health Services*, 467 U.S. at 59–61, 104 S.Ct. at 2223–24; *Schweiker v. Hansen*, 450 U.S. at 788–89, 101 S.Ct. at 1471. Moreover, the alleged statements by the I.R.S. agents were not made until 1985, one and a half years after the assessment had been made. Assuming arguendo that Ash-

er's meeting with the I.R.S. agents provided the basis for his failure to pay his taxes, it does not explain why he failed to make the tax payments in the year and a half prior to the meeting.

## LIABILITY FOR TAX YEARS 1978 AND 1979

The Government concedes that the income tax deficiencies for the years 1978 and 1979 have been paid in full. (Plaintiff's Post–Trial Memo. at 21). The only remaining dispute for these years concern the interest that is due.

Defendants claim that an interest schedule provided by an IRS appellate officer (Exhibit A) states that $224.49 in interest is owed. The Government maintains that this schedule is "not a reflection of the actual statutory interest rate due." (Plaintiff's Post–Trial Memo. at 21). Since the Government has not presented any evidence to demonstrate that the interest schedule provided by the I.R.S. was calculated incorrectly, we find that the defendants owe the Government $224.49 in interest for tax years 1978 and 1979.

## ORDER

It is

Ordered that judgment be entered in favor of the plaintiff, United States of America against defendants Red Stripe, Inc, f/k/a Asher Bros, Inc. and George Asher in the sum of $22,541.25 for the tax year ending June 30, 1975, the sum of $86,570.14 for the tax year ending June 30, 1976, and the sum of $349,508.14 for the tax year ending June 30, 1977—the total sum of $458,619.53 together with interest and interest in the sum of $224.49 (for the tax years 1978 and 1979) together with penalty pursuant to I.R.C. § 6651(a)(2) from October 20, 1983.

The Government is directed to compute the interest and penalty on the sums due to the date of the memorandum and order and serve defendants' counsel with the copy of the computation. Defendants' counsel may challenge the Governments' computation within five (5) days of receipt of the same.

Entry of judgment is stayed pending determination of the sum due to date.

SO ORDERED.