**DIXIE YARNS, INC., as the Successor in Interest to China Grove Cotton Mills Co., Plaintiff,**

v.

**Arthur FORMAN, Wallace Forman, Carol Forman, Edith Forman, Arthur Forman Enterprises, Ltd., and Industrion, Inc., Defendants.**

No. 91 Civ. 6449 (CSH).

United States District Court, S.D. New York.

Nov. 20, 1995.

Kreindler & Relkin, P.C., New York City (Donald L. Kreindler, David H. Relkin, Marc D. Klein, of counsel), for plaintiff.

Israel & Bray, New York City (Stanley Israel, of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

This diversity case is before the Court on plaintiff's motion for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons that follow, the motion will be granted.

## BACKGROUND

The parties' litigious relationship has spanned a number of years. In two previous Memoranda Opinions and Orders, dated April 3, 1990 and June 17, 1993, in this and a related cases, I confirmed plaintiff's arbitration award against the defendant, Industrion, Inc., and denied plaintiff's motion for summary judgment, respectively. Familiarity with these prior rulings is presumed. I reiterate the facts to the extent necessary for this opinion.

Plaintiff Dixie Yarns, Inc. ("Dixie") is a Tennessee corporation engaged in the manufacturing and sale of textile yarns. Its principal place of business is in Chattanooga, Tennessee. Dixie is the successor in interest to China Grove Cotton Mills, Co. ("China Grove"), a seller of textile products and a North Carolina corporation with its principal place of business in China Grove, North Carolina.

Defendants Arthur Forman, Wallace Forman, Carol Forman, and Edith Forman are residents of New York and former officers, directors, and shareholders of defendant Industrion, Inc. ("Industrion"). Industrion was at all relevant times a New York corporation engaged in the purchase and sale of textile fabric. Defendants Arthur and Wallace Forman were also officers, directors, and shareholders of defendant Arthur Forman Enterprises, Ltd. ("AF Enterprises"). AF Enterprises was at all pertinent times a New York corporation engaged in the sale of textile products.

From September 15, 1986 through January 13, 1987 China Grove and Industrion entered into contracts pursuant to which China Grove sold yarn to Industrion. Following Industrion's failure to pay several of China Grove's invoices, China Grove brought an action for $1,215,040.29 against Industrion in a North Carolina state court on April 28, 1988.

On August 30, 1988, pursuant to an arbitration clause in the underlying contract, Industrion served a Demand for Arbitration on China Grove before the American Arbitration Association in New York City. The North Carolina action was stayed on May 13, 1988 and dismissed on April 3, 1989.

An arbitration award of $1,228,217.81 was entered in favor of China Grove and against Industrion on October 19, 1989. China Grove petitioned this Court to confirm the award. 89 Civ. 7179, 1990 WL 41726. I confirmed the award in the Memorandum Opinion and Order of April 3, 1990. The Clerk entered judgment against Industrion on May 1, 1990 for $1,284,667.58. Both parties agree that, to date, Industrion has not paid a cent of this award.

Following confirmation of the arbitration award, Dixie acquired China Grove. By that time, Industrion was in failing financial health. The bulk of Industrion's sales had been to the Department of Defense ("DOD"). DOD's proposal, in September 1987, to debar Industrion from government contract work had a devastating effect upon Industrion. Industrion subsequently became insolvent and ceased operations in or about June 1990. Dixie filed the captioned action against the individual defendants and Industrion, alleging that the individual defendants looted Industrion of assets with which Industrion could have paid the judgment. Dixie's earlier, self-styled summary judgment motion, more properly characterized as one under Rule 12(f), was denied in the Memorandum Opinion and Order dated June 17, 1993.

Dixie now moves for summary judgment on the third claim pleaded in its amended complaint. The first claim lists a number of transfers and conveyances of Industrion assets to one or another of the individual Forman defendants. ¶ 22(a)–(f). The third claim alleges that those transfers and conveyances were fraudulent and void as to China Grove, Dixie's predecessor in title, pursuant to § 273–a of the New York Debtor and Creditor Law.

Specifically, Dixie argues that the defendants disguised these transfers as repayments for loans that they had given to Industrion over the years. Defendant Arthur Forman states in his opposing affidavit that, by early 1989, the four Forman defendants had lent "many millions" of dollars to Industrion and approximately $4,000,000 was still outstanding. Prior to forwarding more funds to the family business, the defendants decided to draw up security agreements and these were executed on June 6, 1989. According to the Forman affidavit, the defendants resumed loaning sums to Industrion on June 30, 1989. From that date, defendants' loans to Industrion totalled over $1,000,000. The last recorded loan was forwarded to Industrion in April 1990.

Both parties agree that, beginning with the week of May 5, 1988, the four individual Forman defendants began taking weekly "draws" in lieu of salary, characterizing those

withdrawals as repayments of their antecedent loans. The weekly sum of these "draws" significantly increased over time until the last draw was paid to Edith Forman on April 26, 1990. See Exhibits I, J and K attached to Plaintiff's Affidavit in Support of Summary Judgment. It is apparently undisputed that the four individual defendants transferred $578,612.74 to themselves from 1988 through 1990. In addition, it is apparently undisputed that Arthur Forman (acting on his own or on behalf of his company, AF Enterprises) received funds that had been owed to Industrion from various account debtors: $8,517.20 from M.S.I. International in June 1990; $9,208.58 from Franklin Management Corp. in June 1990 and another $5,636.58 from Franklin Management Corp. in June 1991; $111,530.97 from R.J. Textiles in August 1990; and three payments of $34,214 each from Westmont in January 1991, 1992 and 1993. In addition, it is agreed that Arthur Forman took all of Industrion's remaining inventory. The primary action in that regard occurred in April 1990, when Arthur Forman took approximately 500,000 yards of camouflage 1.1 Ripstop nylon cord. The value of the Ripstop is in dispute. Defendant Arthur Forman claims it was worth $300,000 at the time, while Dixie places its value at between $875,000 and $1,000,000. Dixie alleges that all of these conveyances—whether as weekly "draws" or transfers of accounts receivable and inventory—were fraudulent as to Dixie as a judgment debtor.

Dixie's third cause of action claims damages pursuant to New York Debtor and Creditor Law § 273–a and attorney's fees under New York Debtor and Creditor Law § 276–a. Plaintiff alleges that there are no disputed genuine issues of material fact. Plaintiff considers the defendants' Local Civil Rule 3(g) statement to be completely deficient and argues that the defendants have therefore failed to raise a single issue of fact.

## DISCUSSION

### I. Summary Judgment

■■■ Under Fed.R.Civ.P. 56(c), the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Insurance,* 804 F.2d 9 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)) (citation omitted). The responding party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' ... or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations omitted). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### II. Local Civil Rule 3(g)

■■■ Local Civil Rule 3(g) of this Court states in part:

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

All material set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

S.D.N.Y. Local Civil Rule 3(g).

The defendants in this action timely submitted a statement pursuant to Local Civil Rule 3(g) alleging that there are genuine issues to be tried in this suit. *See* Statement Pursuant to Local Civil Rule 3(g) Stating There Are Genuine Issues to Be Tried ("De-

fendants' 3(g)"). The defendants submitted this document after the plaintiff submitted a statement of its own containing 63 paragraphs of purported facts intended to show there are no material issues to be determined at trial. *See* Statement Pursuant to Local Civil Rule 3(g) Stating There Is No Genuine Issue to Be Tried ("Plaintiff's 3(g)"). In contrast to the Plaintiff's 3(g) statement, the Defendants' 3(g) response consists of only four paragraphs that contain alleged material facts and a final paragraph that simply lists 24 of plaintiff's 63 paragraphs with which the defendants disagree.

Pointing to the text of the defendants' Rule 3(g) statement, Dixie argues that "it is clear that [the defendants] have failed to adequately controvert *any* of the 63 paragraphs in Dixie's Rule 3(g) statement. Accordingly, the defendants' deficient Rule 3(g) statement cannot raise a triable issue of fact." Dixie's Reply Memorandum of Law ("Plaintiff's Reply") at 13 (emphasis in original). To support its argument, Dixie quotes nearly half of an opinion which states, in part, that "a Rule 3(g) statement must be short and concise; but it cannot be anemic. Within its four corners, the non-movant's Rule 3(g) statement must contain a summary of the facts that are in dispute." *United States v. Pilot Petroleum Assoc.*, 122 F.R.D. 422, 423 (E.D.N.Y.1988). In *Pilot Petroleum*, the plaintiff's Rule 3(g) statement contained 64 numbered paragraphs each containing facts said to be undisputed. *Id.* The defendants responded by simply listing 19 of plaintiff's numbered paragraphs with which the defendants claimed a material issue existed. *Id.* The court did not consider defendants' statement sufficient to satisfy Rule 3(g). "It is the burden of the non-movant, through the Rule 3(g) statement, to identify not only the facts that it alleges are disputed, but to direct the court to that part of the record ... that supports its view of the facts." *Id.*

If the case at bar closely resembles *Pilot Petroleum* regarding the parties' use of Rule 3(g) statements, the courts' determinations of their effect upon the summary judgment motions should be similar as well. While the defendant in *Pilot Petroleum* did not direct the court to that part of the record which supported its factual allegations, the court concluded that "the sheer volume of affidavits and the other material submitted in opposition suggest, that in this particular case, there may well exist a genuine issue of fact." *Id.* I rule in a similar fashion regarding the case at bar. Although it may be sloppy lawyering for the non-moving party to rattle off—without explanation or cross-referencing from the record—a selection of the moving party's numbered paragraphs in the Rule 3(g) statement, it is not an offense of such import as to deem all the facts of the moving party's Rule 3(g) statement admitted.

Instances where facts are deemed admitted due to insufficient Rule 3(g) statements require much greater abuses of the rule. *See Seward & Kissel v. Smith Wilson Co., Inc.*, 814 F.Supp. 370, 377 (S.D.N.Y.1993) (facts asserted by plaintiff deemed admitted because defendant's Rule 3(g) statement contained allegations unsupported by the record or the law); *Amsler v. Corwin Petroleum Corp.*, 715 F.Supp. 103, 105 (S.D.N.Y.1989) (plaintiff's allegations deemed admitted because defendants did not submit a counterstatement of facts in dispute as required by Rule 3(g)); *Carlton v. Interfaith Medical Center*, 612 F.Supp. 118, 123 n. 4 (E.D.N.Y. 1985) (defendant's statistical data deemed admitted because plaintiff's Rule 3(g) statement did not address the data). In the case at bar, the facts that are contested in the defendants' Rule 3(g) statement are indeed discussed in the record, and I decline to deem plaintiff's assertions admitted as uncontested facts.

But that ruling does not foreclose consideration of whether the motion papers reveal a "genuine issues as to any material fact," Rule 56(c). That question must be answered in the light of the governing law, here the New York Debtor and Creditor Law.

### III. *New York Debtor and Creditor Law § 273–a*

Dixie claims that the transfers alleged in the Complaint are fraudulent as to it by reason of § 273–a of the Debtor and Creditor Law. That section provides:

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

Three elements must exist in order to support a claim under § 273–a: (1) the conveyance was made without fair consideration; (2) the conveyor is a defendant in an action for money damages or a judgment in such action has been docketed against him; and (3) the defendant has failed to satisfy the judgment. *In re Fair*, 142 B.R. 628, 631 (Bankr.E.D.N.Y.1992); *Republic Insurance Co. v. Levy*, 69 Misc.2d 450, 329 N.Y.S.2d 918, 919 (Sup.Ct. Rockland 1972); *Schoenberg v. Schoenberg*, 113 Misc.2d 356, 449 N.Y.S.2d 137, 139, *mod. on other grounds*, 90 A.D.2d 827, 456 N.Y.S.2d 14 (Sup.Ct. Nassau 1982). I will deal with each of these elements in ascending order of complexity, beginning with the third element and concluding with the first.

## A. *Failure to Satisfy the Judgment*

It is common ground that defendant Industrion has never paid the $1,284,667.58 judgment that this Court entered on the arbitration award on May 1, 1990. The third of § 273–a's three elements has thus been met.

## B. *Conveyor as Defendant in an Action for Money Damages*

■ As discussed above, China Grove's suit against Industrion began in North Carolina on April 28, 1988. The defendants began taking their weekly draws from Industrion's assets only a few days later, on May 5, 1988. Affidavit in Support of Plaintiff Dixie's Motion for Summary Judgment ("Plaintiff's Affidavit"), Exhibit H. The North Carolina action was stayed on May 13, 1988 but not formally dismissed until April 3, 1989. By that time, the arbitration proceedings were under way in New York, having begun on August 30, 1988, when Industrion served its demand. The arbitration panel issued its award on October 19, 1989 and China Grove

petitioned to confirm the award in this Court on October 27, 1989. From that date until the present, the parties have been litigating in this Court.

Thus, from May 5, 1988 through April 26, 1990—the period during which the individual defendants received draws from Industrion— Industrion and China Grove were in an adversary relationship. There were several stages in that relationship: North Carolina litigation only, April 28, 1988–August 30, 1988; New York arbitration and stayed North Carolina litigation, August 30, 1988– April 13, 1989; New York arbitration only, April 14, 1989–October 19, 1989 (date of arbitration award); and New York litigation only, October 27, 1989 (filing of petition to confirm the award) to the present. Dixie argues that these circumstances satisfy the second element of § 273–a.

The defendants, however, argue that an arbitration proceeding does not constitute an "action for money damages," as that phrase is used in § 273–a. If that was an accurate construction of the statute, plaintiff would not have satisfied an element of § 273–a for that period of time when the arbitration panel (and not the state or district court) was considering the case. To support their argument, defendants rely on a line of cases which hold that, to determine the application of Business Corporation Law § 1312 ("B.C.L. § 1312"), New York's Door Closing Statute, an arbitration proceeding is not considered a special proceeding or action. *See Knoll North America, Inc. v. IBF Group, Inc.*, 158 Misc.2d 227, 601 N.Y.S.2d 224, 226 (1993).

In their cursory discussion, defendants fail to acknowledge that the rationale for the court's decision in *Knoll* distinguishes it from the case at bar. B.C.L. § 1312 is a revenue-raising statute and serves an entirely different purpose than Debtor and Creditor Law § 273–a. Section 273–a was enacted to discourage fraudulent transfers of debtors' assets that render judgments in favor of plaintiffs meaningless.

Where arbitration may be differentiated from court "action" in one context, such a distinction may not be warranted in another. Just as the defendants cited B.C.L. § 1312 to

illustrate that arbitration is not considered a "judicial proceeding," the plaintiff cites Education Law § 3813 to show that arbitration is indeed considered an "action." *See Board of Education v. Wager Construction Corp.*, 37 N.Y.2d 283, 372 N.Y.S.2d 45, 49, 333 N.E.2d 353, 356 (Ct.App.1975). In *Wager*, the New York Court of Appeals held that the requirement in Education Law § 3813 that a written claim against a board of education must be submitted "within three months after the accrual of such claim" applies both to parties bringing arbitration proceedings against a board and to those wishing to bring an "action or special proceeding." *Id.* Section 3813 includes such a "written claim" requirement so that school boards have prompt notice of claims being brought against them and can initiate timely investigations of the allegations. *Id.* Such a need for notice is necessary whether the plaintiff is commencing an arbitration proceeding or a case in court. Arbitration is equated with an "action" in *Wager.* Defendants' citation to B.C.L. § 1312 is therefore not conclusive.

While it is true that the Civil Practice Law no longer classifies arbitration as a "special proceeding," *Id.;* compare CPLR 7502 with Civ.Prac.Act § 1459; see, generally, 8 Weinstein–Korn–Miller, N.Y.Civ.Prac., par. 7502.04, exceptions to that rule do exist. *Wager* "puts the bar on notice that for some—albeit very limited—purposes the words 'special proceeding' may be found to include arbitration." 8 Weinstein–Korn–Miller, N.Y.Civ.Prac., par. 7502.04 at 75–85. The case at bar furnishes another example. A statutory construction removing arbitration from the ambit of § 273–a, to the disadvantage of deserving creditors, would discourage the use of arbitration in New York, a result inimical to public policy, which favors arbitration as a form of alternate dispute resolution.

I conclude that in the case at bar, the arbitration proceeding qualifies as "an action for money damages." The second element of § 273–a has thus been satisfied.[1]

### C. *Lack of Fair Consideration*

The phrase "fair consideration," as used in § 273–a, is defined by § 272 of the Debtor and Creditor law, which provides:

Fair consideration is given for property, or obligation,

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

Section 272 contains two elements: fair equivalent value, and good faith. Reading § 273–a and § 272 together, creditors asserting § 273–a claims "have two separate approaches to avoid transfers. Under the first, they may void any transfer made without fair consideration regardless of the intent of the parties. Under the second approach, even if there was fair consideration, the party in question must prove that the consideration was taken in good faith." *HBE Leasing Corp. v. Frank*, 837 F.Supp. 57, 60 (S.D.N.Y. 1993); *See also Southern Industries, Inc. v. Jeremias*, 66 A.D.2d 178, 411 N.Y.S.2d 945, 948 (2d Dept.1978); *In re Checkmate Stereo and Electronics, Ltd.*, 9 B.R. 585, 617 (Bankr.E.D.N.Y.1981), *aff'd*, 21 B.R. 402 (E.D.N.Y.1982).

---

1. My conclusion is in accord with that reached by Judge Lowe in *Fertilizantes Fosfatados Mexicanos, S.A. v. C.Y. Chen*, 1992 WL 204394, 1992 U.S.Dist. Lexis 12277 (S.D.N.Y.1992). In that case plaintiff brought an action under § 273–a to enforce a judgment entered in this Court on an arbitration award. Judge Lowe held that plaintiff sufficiently pleaded a § 273–a claim by alleging that defendant "made conveyances of assets without fair consideration during the period prior to and during arbitration between the parties." *Id.*, 1992 WL 204394 at *5, at *14.

The defendants in *Fertilizantes* do not appear to have made the argument urged by defendants at bar, namely, that an arbitration is not "an action for money damages" under § 273–a. At least, Judge Lowe did not analyze the issue; and the two New York cases she cited in support of the pleading's sufficiency involved litigation, not arbitration. *Id.*, 1992 WL 204394 at *5, at *15. Nevertheless, her holding is wholly appropriate, given the considerations discussed in text.

Since either approach is legally sufficient to sustain a § 273-a claim, the remaining question on the present motion for summary judgment is whether defendants have demonstrated genuine issues for trial with respect to both approaches.

In point of fact, they have failed to do so with respect to either.

As to the element of fair equivalent value, the individual Forman defendants contend that the transfers Dixie seeks to reach were made to repay loans made by the Formans to Industrion. The repayment of an antecedent debt such as a loan, the Formans argue, constitutes fair consideration under § 272.

In *Atlanta Shipping Corporation, Inc. v. Chemical Bank,* 818 F.2d 240, 248–49 (2d Cir.1987), the Second Circuit considered the meaning of "fair consideration" under § 272, and held: "In general, repayment of an antecedent debt constitutes fair consideration *unless the transferee is an officer, director, or major shareholder of the transferor.*" (emphasis supplied). That holding controls the case at bar. Industrion was a small family-owned corporation. The four individual Forman defendants were all officers, directors, or major shareholders of Industrion. Accordingly they cannot be heard to argue that their recapture of funds loaned by them to Industrion, in derogation of a § 273-a creditor's rights, constitutes fair equivalent value under § 272.

But even if that were not the case, Dixie is entitled to judgment on its second approach, namely, that the consideration, albeit fair, was not taken in good faith.

Under New York law, "a person seeking to set aside a conveyance upon the basis of lack of good faith must prove that one or more of the following factors is lacking: (1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay or defraud others." *Southern Industries, Inc. v. Jeremias,* 411 N.Y.S.2d at 949. In *Southern Industries* the appellate division held that the transfer in question "must be deemed void for lack of good faith because it was consummated with the intent to obtain an unconscionable advantage for one, who is an officer, director and major stockholder of the corporation over the rights of other general creditors." *Id.* The Court reached the same conclusion in *Studley v. Lefrak,* 66 A.D.2d 208, 412 N.Y.S.2d 901, 906 (2d Dept. 1979): "the manipulation of corporate assets by the respondents in the face of the petitioner's rights by preferring the interests of those in control of the corporation reflects bad faith and deprives the respondents of the status of transferees for fair consideration."

These elements are present in the case at bar, singly and in combination. Bad faith is established as a matter of law. No genuine issues require trial. The Forman defendants were aware from April 28, 1988, when Dixie sued Industrion in the North Carolina court, that a major commercial claim was pending against the corporation. The Forman defendants commenced their withdrawals from Industrion very shortly thereafter, during the week of May 5, 1988, and continued them through April, 1990, well after the arbitrators had made their award in China Grove's favor, and while its motion to confirm the award was pending in this Court. Moreover, months after this Court entered judgment on the award, the Forman defendants arranged to have account debtors of Industrion pay significant amounts to the individual defendants directly or to a company to which defendant Arthur Forman controlled. Lastly, in April of 1990, one month before Industrion ceased operations altogether, Arthur Forman caused Industrion to transfer to him all of the Company's remaining inventory. The value of that inventory is in dispute, but the nature of the transaction is consistent with the pattern clearly established by the evidence adduced during discovery: a systematic acquisition by the Forman defendants of all of Industrion's assets, with the consequence that Industrion is unable to make any payment on plaintiff's judgment against it. I use the "pattern" advisedly because, as the Second Circuit instructs in *Orr v. Kinderhill Corp.,* 991 F.2d 31, 35 (2d Cir.1993), "an allegedly fraudulent conveyance must be evaluated in context; where a

transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications." (citations and interior quotations omitted).

■ The parties discuss in their briefs whether Industrion was insolvent at the time of, or made insolvent by, the transfers to the Forman defendants. But a claimant under § 273–a need not demonstrate the insolvency of the judgment debtor. It is sufficient to support the claim that the judgment has not been satisfied; and if, as here, it has not, "the question of insolvency is irrelevant to the considerations at hand." *Republic Insurance Company v. Levy*, 329 N.Y.S.2d at 921. *See also Schoenberg v. Schoenberg*, 449 N.Y.S.2d at 139 (in an action under § 273–a, "[t]he questions of actual intent and insolvency are irrelevant.").

In the light of these rules of law, the opposing affidavit of Arthur Forman raises no genuine issue as to any material fact with respect to Dixie's claim under § 273–a. I accept Arthur Forman's protestations that he and members of his family kept loaning Industrion monies in an effort to keep the company operating; nor does the law question their right to do so. What the law does not permit, in the circumstances of this case, is the transfer of all Industrion's assets to the Forman family, thereby rendering Industrion judgment proof.

Accordingly I conclude that Dixie is entitled to summary judgment on the third claim alleged in its amended complaint.

IV. *Plaintiff's Claim for Attorney's Fees Under Debtor and Creditor Law § 276–a*

§ 276–a of the New York Debtor and Creditor law provides that a creditor who succeeds in setting aside a conveyance by a debtor is entitled to recover his reasonable attorney's fees "where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors ..."

■ The Second Circuit has said generally that "[a]n action to set aside a fraudulent conveyance under section 273(a) is an action for constructive fraud", comparing that section with "Debtor & Creditor §§ 276 (governing actual fraud & 276–a) (authorizing award of attorney's fees for proof of actual fraud under § 276)." *Orr v. Kinderhill Corp.*, 991 F.2d at 35. That would suggest that attorney's fees are not recoverable in § 273–a claims, where intent to defraud need not be shown.

However, New York cases support the proposition that a claim for attorney's fees under § 276–a may properly accompany a claim under § 273–a. That was the course followed by the successful plaintiff in *Schoenberg v. Schoenberg, supra*, in which a § 273–a plaintiff was awarded attorney's fees under § 276–a. The Court concluded that the transfers in question "were made with intent to hinder, delay or defraud the judgment creditor." *Id.*, 449 N.Y.S.2d at 140. The plaintiff in *Schoenberg* succeeded on a motion for summary judgment, the court noting that "none of the defendants, in the factual affidavits submitted in opposition even generally deny that these transfers were made with that intent." *Id.*

■ I think that the case at bar presents comparable circumstances, notwithstanding the conclusory assertion in Arthur Forman's affidavit at 17 that: "This was no fraud, constructive or otherwise." The Forman defendants cannot very well deny knowledge of the award and judgment in China Grove's favor, or the inevitable effect upon Industrion's ability to pay that judgment of the Forman defendants' withdrawal of company assets, diversion of company accounts receivable, and transfer of the company's remaining inventory. The requisite intent may be inferred where, *inter alia*, "the conveyances made without fair consideration," *In re Fair*, 142 B.R. 628, 633 (Bankr. E.D.N.Y.1992), a finding sufficiently demonstrated in the case at bar for summary judgment purposes.

I conclude that plaintiff at bar is entitled to recover its reasonable attorney's fees.

*CONCLUSION*

Plaintiff's motion for summary judgment on its third cause of action is granted. Its motion for attorney's fees is granted.

Plaintiff's counsel are directed to settle an order and judgment consistent with this Opinion on seven (7) days' notice within twenty-one (21) days of the date of this Opinion.

The order and judgment may recite plaintiff's entitlement to its attorney's fees. However, setting the amount of the fees will be the subject of further submissions.

In that regard, plaintiff is directed to file and serve within twenty-one (21) days of the date of this Opinion documentation in support of its application for attorney's fees which complies with the governing law in this circuit. *See New York Association for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). Defendants may file and serve answering papers within fourteen (14) days of the date of their counsel's receipt of plaintiff's documentation. Plaintiff may, if so advised, file reply papers within seven (7) days thereafter. The Court will then consider whether, in the light of these written submissions, an evidentiary hearing is required.

The foregoing is SO ORDERED.