**Giles H. MILLER, Jr., Executor of the Estate of Virginia Fletcher Wood, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 91–1049.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1991.

Decided Nov. 20, 1991.

As Amended Dec. 16, 1991.

John Daniel Epps, LeClair, Ryan & Joynes, Richmond, Va., argued (Mary Lloyd Sinnott, on brief), for plaintiff-appellant.

Bridget Maria Rowan, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, Tax Div., U.S. Dept. of Justice, Washington, D.C., E. Montgomery Tucker, U.S. Atty., Roanoke, Va., for defendant-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and SPROUSE, Circuit Judges.

OPINION

MURNAGHAN, Circuit Judge:

Giles Miller, Jr., the executor of an estate, filed a claim against the Internal Revenue Service, seeking a federal estate tax refund. Miller argued that the estate was entitled to the refund of taxes paid on three alternative bases: (1) because a formal claim for a refund of the tax paid had been within the prescribed statutory period; (2) because an informal claim for refund had been filed within the prescribed period; or (3) because the IRS could be equitably estopped from denying the refund.

The IRS, while apparently not contesting that a timely-filed refund claim would succeed, nevertheless moved for summary judgment, contending that Miller's request for a refund was untimely and therefore, that the District Court lacked jurisdiction under 26 U.S.C. § 7422. In addition, the IRS argued that Miller's estoppel count failed as a matter of law. On February 15, 1991, the district court, upon granting the

summary judgment motion, entered judgment against Miller on all three counts. Miller has appealed.

Miller is the executor of the estate of Virginia Fletcher Wood. The question presented here stems from the holographic will that Wood executed. The residuary clause thereof bequeathed one-half of the residuary estate to the American Cancer Society and the other half to "the State of Virginia organization or foundation engaged in research concerning ailments of the heart and heart trouble."

Upon Wood's death on August 28, 1979, Miller offered the will for probate in the Circuit Court of Rappahannock County, Virginia. Miller, realizing the uncertainty regarding the identity of the second residual beneficiary, sought the court's guidance in the distribution of the residuary estate. He joined all interested parties.

During the pendency of the lawsuit, Miller filed the estate's federal estate tax return with the IRS on November 26, 1980. On the estate tax return, Miller claimed a charitable deduction for the entire residuary estate on the grounds that it was left to organizations that were exempt from federal taxation. On March 26, 1982, Rupert Winfree, an attorney for the IRS, contacted Miller and audited the estate. Winfree advised Miller that under certain Treasury Regulations, half of the residuary estate likely did not qualify for charitable deduction because a distinct possibility existed that half would go to the testatrix's heirs at law, as a result of the uncertainty as to the identity of the second residual beneficiary. Winfree urged Miller to pay the estate tax on one half of the residuary estate to allow closing of the estate and to avoid later being required to pay interest at the rate of 20% *per annum* on any unpaid taxes. Winfree reassured Miller that if the entire residue were determined to enjoy tax-exempt status, the IRS would refund the taxes paid with interest. Nothing was said by Winfree about the necessity of a refund claim to preserve the right to any

such refund. Neither did Winfree indicate that a refund claim was not necessary. Relying on Winfree's statements, in the Spring of 1982, Miller paid the IRS approximately $315,000 in estate taxes and interest.[1]

Meanwhile, the litigation in the Virginia courts over distribution of the residuary estate continued. On July 13, 1982, the Circuit Court of Rappahannock County held that the portion of the residuary clause of Wood's will that referred to "the state of Virginia organization or foundation engaged in research concerning ailments of the heart and heart trouble" was ambiguous. The circuit court, accordingly, concluded that one half of the residuary estate should pass to Wood's heirs at law. The American Heart Association appealed the decision and on March 7, 1986, the Virginia Supreme Court reversed the decision of the circuit court, awarding one half of the residuary estate to the American Heart Association.

Miller filed no refund claim from the date the taxes were paid, in April and June 1982, until 1986. It was not until after the Virginia Supreme Court's decision awarding one half of the residuary estate to the American Heart Association, on April 27, 1986, that Miller finally requested a refund, with interest, from the IRS. The IRS denied Miller's request, on the basis that the refund request was filed more than two years after the tax had been paid and was, thus, barred under the two-year statute of limitations provided in section 6511 of the Internal Revenue Code. *See* 26 U.S.C. § 6511(a) (1989).

After the IRS denied his tax refund request, Miller filed suit claiming entitlement to a refund of estate taxes paid. As in the court below, Miller has claimed an entitlement on three alternative bases: (1) because a formal claim had been filed for a refund of the tax paid within the prescribed statutory period; (2) because an informal claim had been filed for refund within the prescribed period; and (3) because the IRS

---

1. On April 27, 1982, Miller paid $250,582.98 in estate taxes and on June 15, 1982, Miller paid accrued interest of $62,446.65.

should be equitably estopped from denying the refund.

■ Relying on *Walkden v. United States*, 255 F.2d 681 (6th Cir.), *cert. denied*, 358 U.S. 825, 79 S.Ct. 41, 3 L.Ed.2d 65 (1958), Miller argues that as long as the Virginia litigation continued, the statute was, in effect, tolled, so that the refund claim did not accrue until the conclusion of the litigation on March 7, 1986. Thus, Miller contends that the April 27, 1986 formal request for refund was made well within the limitations period. The *Walkden* case held, in a situation involving the probate of two conflicting wills, that the date upon which the statute of limitations contained in section 6511 of the Internal Revenue Code commenced running was the date of the admission to probate of the later probated will.[2]  *Walkden*, 255 F.2d at 681.

In the instant case, however, the formal refund claim that indisputably was filed on April 27, 1986 was more than three years after the filing of the tax return on November 26, 1980, and was more than two years after the 1982 tax payments. *See* 26 U.S.C. § 6511(a) (1989):

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

Thus, Miller has offered no evidence of a formal refund claim within the statute of limitations period provided for in section 6511(a) of the Internal Revenue Code.

■ In the alternative, Miller has claimed that in the event of a determination that he failed to file a formal refund claim within the statutory period, the lower court should have found that he filed an informal claim within the limitations period. The IRS, while admitting that informal notice of a tax-refund claim can be sufficient if made within the limitations period, nevertheless, has argued that Miller has failed to meet the requirements of an informal notice in that there was no "writing" providing such notice within the limitations period. Any merely oral informal notice, according to the IRS, would be inadequate as a matter of law to prevent the running of the limitations period.

There has evolved a narrow group of "informal" notice of tax-refund claims that have been construed to provide sufficient notice within the limitations period. Courts uniformly have held, however, that to rely on an informal notice of a tax-refund claim, the taxpayer *must* have presented some type of *written* notice to the IRS. *See, e.g., Vintilla v. United States*, 931 F.2d 1444, 1446 (11th Cir.1991); *Martin v. United States*, 833 F.2d 655, 660 (7th Cir.1987); *Furst v. United States*, 678 F.2d 147, 151 (Ct.Cl.1982). *See also Crenshaw v. Hrcka*, 237 F.2d 372, 373 (4th Cir.1956).

■ In addition to that requirement, the notice must have been sufficient to apprise the IRS that a tax refund is sought and to focus attention on the merits of the dispute. *See Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619, *reh'g denied*, 325 U.S. 895, 65 S.Ct. 1562, 89 L.Ed. 2006 (1945). *Accord Martin*, 833 F.2d at 660; *Furst*, 678 F.2d at 151–52. Moreover, "the shortness of the memory of man," and the need to afford the IRS clear notice of a demand for a refund in order to enable the administration of that office to conduct its affairs, necessitate that the writing be sufficiently specific to apprise the IRS that the taxpayer desires a refund and to pin-point the area of dispute, thereby facilitating an examination of the claim if appropriate. *Wrightman Petroleum Co. v. United States*, 35 F.Supp. 86, 96 (Ct.Cl.1940), *cert.*

---

**2.** Even assuming we were to adopt Miller's characterization of the *Walkden* decision, which we decline to do, it is clear that more than three years had elapsed from the date of probate at the time that Miller filed his formal tax refund claim. Furthermore, it is clear that the litigation regarding the identification of the second residual beneficiary had no effect on the date of probate of the will.

*denied,* 313 U.S. 578, 61 S.Ct. 1095, 85 L.Ed. 1535 (1941).

Miller has asserted that the 1980 Form 706 estate tax return, and the 1981, 1982, and 1983 Form 1041 fiduciary tax returns, explicitly and in writing, afforded the IRS notice of the estate's claim for a refund in a timely manner (albeit informally). Yet the Form 706 estate tax return simply listed Wood's entire residuary estate as subject to a charitable deduction. As the IRS points out, the form showed no estate tax liability and made no claim for refund of an overpayment because no estate taxes had been paid. In addition, the fiduciary tax returns were inadequate to satisfy the writing requirement. Like the estate tax form, the fiduciary income tax returns showed no tax liability and make no claim for a refund. Although the forms mention ensuing litigation over the charitable bequest, no mention is made of a refund.

■ Furthermore, we have expressly held that it is insufficient for a taxpayer to argue that the IRS possessed information from which it could deduce that the taxpayer is entitled to or desires a refund. *See Beckwith Realty, Inc. v. United States,* 896 F.2d 860, 863–64 (4th Cir.1990). A taxpayer cannot establish a refund claim by imputing, but not actually providing, such knowledge or information to the IRS. *Id.* In the case at bar, it is clear that Miller has failed to produce a writing sufficient to establish informal notice of a tax-refund claim to the IRS.

■ Finally, in opposition to summary judgment, Miller argued that the IRS should not be permitted to deny the estate a refund, because Winfree (an IRS employee) made ambiguous and misleading statements to Miller that resulted in the estate's current tax problem. Miller points to Winfree's reassurances that, if the estate paid the tax on one half of the residuary, then the IRS would refund such taxes with interest if the residuary estate ultimately was awarded to a tax-exempt organization. While that was perhaps so, the statement contains no purported waiver of the requirement that a timely refund claim be filed. Miller could have filed a claim or

claims contemporaneously with the 1982 payments of tax or for two years thereafter. Nonetheless, based upon Winfree's statements, Miller maintains that under the doctrine of equitable estoppel the IRS should not be permitted to deny the estate a tax return and to disregard Winfree's contrary assurances. The IRS, on the other hand, has argued that, even if Winfree made misrepresentations (and the IRS contends that he did not), the IRS still cannot be bound by the statements of its agent.

■ Under relevant case law, it is clear that neither the government, nor a government agency such as the IRS, can be equitably estopped from asserting its legal rights because of the actions of an agent. *See, e.g., Posey v. United States,* 449 F.2d 228, 234 (5th Cir.1971) ("it is well established that the Government is not bound by the unauthorized or incorrect statements of its agents"); *Bay Sound Transp. Co. v. United States,* 410 F.2d 505, 510 (5th Cir.), *cert. denied,* 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969) ("the Government will not be estopped by the unauthorized statements of its agents"); *Sanders v. Commissioner,* 225 F.2d 629, 634 (10th Cir.1955), *cert. denied,* 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839 (1956) ("the United States may not be estopped by the unauthorized acts of its agents nor may such agents waive the rights of the United States by their unauthorized acts"). There has been produced no evidence that the statements attributed to Winfree were authorized by any IRS superior.

Furthermore, courts expressly have prohibited the application of the doctrine of equitable estoppel in cases involving the IRS. *See, e.g., Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957) (equitable estoppel cannot be applied against the IRS because of misstatements of law made by its agents); *D'Amelio v. United States,* 679 F.2d 313, 316 (3rd Cir.1982) (the IRS cannot be estopped from relying on the section 6511(a) claim filing requirement because the IRS lacks "authority to so dispense with an explicit Congressional mandate"); *Elrod Slug Casting Mach. Co. v.*

713

O'Malley, 57 F.Supp. 915, 920 (D.Neb.1944) ("the assessment and collection of revenues is a governmental function, and the doctrine of estoppel has no place here").

Accordingly, the decision of the district court is *AFFIRMED*.[3]

---

**3.** It may appear harsh that the bequest to the American Heart Association will be less than if the estate tax refund claim had been timely filed but such results may attach to any statute of limitations. Repose and freedom from a possible claim may, as they do here, free him who asserts a statute of limitations from a belated though otherwise justified claim. *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945).