**Alfred TOKER and Annette Toker, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 95 Civ. 3609 (SS).

United States District Court,
S.D. New York.

March 21, 1997.

Hugh Janow, Pearl River, NY, for Plaintiffs.

Sapna V. Raj, U.S. Atty. for the Southern District of New York, New York City, for Defendant.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Plaintiffs Alfred Toker and Annette Toker seek tax refunds, from the defendant Internal Revenue Service, for the years 1982, 1983, and 1984. According to the allegations set forth in their Complaint, the IRS mistakenly disallowed certain deductions, claimed by the Tokers for each of those years, in connection with the couple's partnership interest in "Term Associates Partnership." The Tokers contend that they paid the IRS for these years under protest, and upon the specific understanding that their money would be refunded in the event of a subsequent Tax Court determination that the deductions were proper. Relying upon a recent series of Tax Court decisions which have reached this very result, the Tokers filed the present action claiming that they are entitled to the return of those sums which they overpaid at the insistence of the IRS.

The IRS seeks summary judgment on several grounds, including lack of subject matter jurisdiction and waiver. For the reasons to be discussed, the Court agrees with the IRS that the Tokers are bound both by a decision already rendered against them by the Tax Court for tax year 1982, and by their own assent to a "final settlement" as to tax years 1983 and 1984. Accordingly, defendant's motion is granted.

### BACKGROUND

#### I. The 1982 Tax Year

On April 17, 1986 the Tokers received an IRS notice disallowing 1982 tax year deductions for losses that they had claimed in connection with their investments in Term Associates Partnership ("Term Associates"), a car leasing partnership based in New York. (See Pl.'s Nov. 7, 1996 Mem. of Law in Sup. of Pl.'s Cross–Mot. for Summ. J. at 5.) Seeking a redetermination as to this alleged deficiency, the Tokers filed a petition, in May 1986, with the United States Tax Court. (See Def's Sept. 18, 1996 Mot. for Dis. of the Compl. at Ex. B.) On April 18, 1988, pursuant to a stipulation between the Tokers and the IRS, the Tax Court entered a decision finding "a deficiency in income tax due from the petitioners in the amount of $24,126.00." (See id. at Ex. C.) On June 20, 1988, the Tokers paid $41,650.00, the deficiency plus interest, for their 1982 taxable year. (See Pl.'s Nov. 6, 1996 Aff. at Ex. 3.)

Alfred Toker maintains that he entered into an agreement with the IRS providing that "if there was a later administrative or judicial determination that Term Associates deductions were correct as originally reported, taxpayers would be entitled to recovery of all sums remitted." (Pl.'s Nov. 7 Mem. of Law in Sup. of Pl.'s Cross–Mot. for Summ. J. at 5.) This purported agreement does not appear in the decision rendered by the Tax Court, though there is a section of the decision reserved for stipulations. (See Def's Sept. 18, 1996 Mot. for Dis. of the Compl. at Ex. C.) The only written suggestion of the alleged agreement is a notation of "PAID UNDER PROTEST" written on Alfred Toker's June 20, 1988 check to the IRS satisfying the Tax Court's judgment against him. (See Pl.'s Nov. 6, 1996 Aff. at Ex. 3.)

#### II. The 1983 and 1984 Tax Years

In contrast to tax year 1982, the Tokers did not resort to the Tax Court to resolve their disputes with the IRS pertaining to the deductions for tax years 1983 and 1984. When the IRS disallowed the Tokers' 1983 and 1984 deductions related to Term Associates, the Tokers filed revised tax forms for those years, and paid the amounts requested by the IRS. In a September 2, 1988 cover letter accompanying the amended tax forms, Alfred Toker wrote that he made "these payments under protest with the right to recover same or part depending on a final ruling administratively or if necessary judicially." (See Def's Sept. 18, 1996 Mot. for Dis. of the Compl. at Ex. E.) Mr. Toker further indicated that he had been advised by

the IRS that such a reservation of rights was appropriate. *Id.*

By February 1990, the IRS had made its final administrative ruling, and the agency sent the Tokers two "Notice[s] of Final Partnership Administrative Adjustment" for tax years 1983 and 1984, respectively. (*See* Def's Sept. 18, 1996 Mot. for Dis. of the Compl. at Ex. F.) These notices provide as follows:

IF YOU WANT TO ENTER INTO A BINDING SETTLEMENT TO TREAT PARTNERSHIP ITEMS CONSISTENTLY WITH THE TREATMENT OF THE ITEMS ON THE PARTNERSHIP RETURN AS MODIFIED BY THE FPAA, SIGN AND RETURN THE ENCLOSED FORM 870–P. THE SIGNING AND RETURNING OF THE FORM 870–P CONSTITUTES A SETTLEMENT OFFER BY YOU. IF THE COMMISSIONER ACCEPTS YOUR OFFER OF SETTLEMENT, THE TREATMENT OF THE PARTNERSHIP ITEMS UNDER THE SETTLEMENT WILL BE BINDING AND WILL NOT BE AFFECTED BY ANY LATER JUDICIAL DETERMINATION.

(*Id.*) These notices were accompanied by the above-referenced Forms 870–P, which provided:

UNDER THE PROVISIONS OF SECTION 6224(c) OF THE INTERNAL REVENUE CODE, THE UNDERSIGNED OFFERS TO ENTER INTO AN AGREEMENT WITH RESPECT TO THE DETERMINATION OF PARTNERSHIP ITEMS OF THE PARTNERSHIP FOR THE YEAR SHOWN ON THE ATTACHED SCHEDULE OF ADJUSTMENTS.

\*     \*     \*

IF THIS OFFER IS ACCEPTED FOR THE COMMISSIONER, THE TREATMENT OF THE PARTNERSHIP ITEMS UNDER THIS AGREEMENT WILL NOT BE REOPENED IN THE ABSENCE OF FRAUD, MALFEASANCE, OR MISREPRESENTATION OF FACT; AND NO CLAIM FOR REFUND OR CREDIT BASED ON ANY CHANGE IN THE TREATMENT OF

PARTNERSHIP ITEMS MAY BE FILED OR PROSECUTED.

(*Id.*) Section 6224(c), referenced in the Forms 870–P, reiterated the "binding" nature of the settlement agreement. On February 21, 1990, the Tokers availed themselves of this "SETTLEMENT OPPORTUNITY"—per the description contained in a letter accompanying the packet of materials—and executed the Forms 870–P.

In a cover letter Alfred Toker sent to the IRS along with the signed forms, Mr. Toker explained that he had "previously satisfied [his] 1983 and 1984 tax liability and . . . there seems to be no need for further adjustment in [his] case." (*See* Pl.'s Nov. 6, 1996 Aff. at Ex. 6.) Therefore, Mr. Toker continued, it was his initial impression that the "Notice of Final Partnership Administration Adjustment dated Feb. 12, 1990, would have no application to [his] case and that there was no need for [him] to sign form 870P." (*Id.*) He explained his ultimate decision to sign the forms as follows:

I called your office to relate my thoughts. Your Ms. Lisa Marinaro informed me that just for the purpose of closing your file she believed you may need the 870P signed. I am therefore enclosing a copy so that you may close my account for the years 1983 and 1984 without any further liability on my part.

Please confirm that you are closing my files of 1983 and 1984 since it is paid in full.

(*Id.*)

A number of Term Associate partners, however, declined similar settlement offers from the IRS, and pursued their claims before the Tax Court. In 1993, these partners prevailed, with the IRS agreeing to allow the disputed Term Associate deductions in full. According to the Tokers, the April 1993 decisions entered into pursuant to these agreements, *Keil v. Commissioner*, Docket No. 14718–89, and *Term Associates v. Commissioner*, Docket No. 14802–90, thereby confirm the validity of the deductions that the Tokers were urged to pay for the tax years 1982, 1983, and 1984. (*See* Pl.'s Nov. 6, 1996 Aff. ¶ 15.) On the basis of these decisions, and invoking their supposed agreement with the IRS concerning tax year 1982, and their

supposed reservation of rights for tax years 1983 and 1984, the Tokers now seek to recover those sums.

### DISCUSSION

#### I. The 1982 Tax Year

■ Before this Court can rule on the merits of a claim, this Court must have subject matter jurisdiction over that claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (noting that "[w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims."). In determining whether such jurisdiction exists, the Court assumes the truth of plaintiffs' factual allegations. *See Atlantic Mut. Ins. v. Balfour Maclaine Intern.,* 968 F.2d 196, 198 (2d Cir.1992). The Tokers, however, have the burden of establishing that this Court possesses subject matter jurisdiction over their claims. *See Myles v. United States,* 810 F.Supp. 390, 393 (N.D.N.Y.1992) ("[T]he burden of proving the existence of subject matter jurisdiction lies with the party alleging jurisdiction"). This is a burden which the Tokers cannot meet.

"It is elementary, although not well known to the layman, that the filing of a timely petition with the United States Tax Court gives that court exclusive jurisdiction, ... thereby barring a refund suit in the district court." *Dorl v. Commissioner of Internal Revenue,* 507 F.2d 406, 407 (2d Cir.1974); *see also Monjar v. Higgins,* 132 F.2d 990 (2d Cir.1943). Indeed, as codified in 26 U.S.C. § 6512(a), once a taxpayer files a petition with the Tax Court, one taxpayer is precluded from recovering any part of the disputed tax in another court. *See also First Nat. Bank of Chicago v. United States,* 792 F.2d 954, 955–56 (9th Cir.1986) (holding that the filing of a petition with the Tax Court precludes the filing of a refund suit in a district court with regard to taxes over which the Tax Court had jurisdiction). Moreover, also according to statute, the United States of Appeals has exclusive jurisdiction to review Tax Court decisions. *See* 26 U.S.C. § 7482.

■ By petitioning the Tax Court in connection with their 1982 taxes, the Tokers divested this Court of jurisdiction over the subject matter of this dispute. Plaintiffs cannot escape this holding, as they attempt to do, by contending that instead of seeking to relitigate the 1988 Tax Court decision, they are bringing an action based upon an oral agreement that the "IRS would refund those amounts if a court later determined in a separate action that disputed Term Associates deductions were proper." (*See* Pl.'s Nov. 7, 1996 Mem. of Law in Sup. of Pl.'s Cross–Mot. for Summ. J. at 16.) Even with their select phrasing, plaintiffs cannot avoid that their present claim is tied to the propriety of their 1982 deductions. Any oral agreement between the Tokers and the IRS was inextricably linked to their liability for tax year 1982. The Tax Court, however, has ruled with respect to this liability, and without suggesting that its decision was contingent on any future administrative or judicial developments. This Court simply lacks the subject matter jurisdiction to revisit that determination. *See Berkery v. United States,* 767 F.Supp. 660 (E.D.Pa.1990) (finding no jurisdiction after previous Tax Court judgment, despite the IRS basing assessments on subsequently dismissed criminal charges, wrong assessments, and a government witness who committed perjury).

■ As the Court has already suggested, it is significant not only that the Tax Court asserted its jurisdiction over the question of plaintiffs' 1982 tax liability, but that it also entered a decision finally resolving that question. Principles of res judicata preclude this Court from disrupting the Tax Court's judgment of the extent of the Tokers' liability. *See Commissioner of Internal Rev. Ser. v. Sunnen,* 333 U.S. 591, 598–99, 68 S.Ct. 715, 719–20, 92 L.Ed. 898 (1948) ("if a claim of liability or non-liability relating to a particular year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year."); *see also United States v. International Bldg. Co.,* 345 U.S. 502, 506, 73 S.Ct. 807, 809, 97 L.Ed. 1182 (1953) (holding

that res judicata applies to a Tax Court judgment based on a compromise settlement). The Tax Court has entered a final judgment as to the Tokers' 1982 tax year liability, and it is not for this Court to revisit the question, even if on the basis of supposed oral understandings and subsequent developments.[1] *Id.; see also Elbert v. Johnson,* 164 F.2d 421, 424 (2d Cir.1947) ("It is immaterial that the issue sought to be litigated in the District Court was not presented to the Tax Court, or could not have been presented because based on subsequent events.").

## II. The 1983 and 1984 Tax Years

Because the Tokers did not previously petition the United States Tax Court on the question of their 1983 and 1984 tax liability, there is no issue as to this Court's subject matter jurisdiction with respect to plaintiffs' claims for deductions claimed for these years.[2] There is an issue, however, whether plaintiffs accepted the settlement terms set forth in the Forms 870–P provided to them by the IRS, and thereby entered into a final and binding agreement with the IRS.

### A. Parol Evidence

■ The interpretation of waivers and agreements between taxpayers and the IRS must be in accordance with general principles of contract law. *See Goldman v. Commissioner,* 39 F.3d 402, 405 (2d Cir.1994). According to these general principles, "[p]arole evidence may be admitted to explain a writing only when the terms of the writing are ambiguous." *Investors Ins. Co. of America v. Dorinco Reinsurance,* 917 F.2d 100, 104 (2d Cir.1990); *see also Greco v. Department of the Army,* 852 F.2d 558, 560 (Fed. Cir.1988) ("Only if there is ambiguity should parole evidence be considered"). Thus, to the extent that the Forms 870–P constitute "integrated" agreements, the Court can not

consider plaintiffs' extrinsic evidence allegedly modifying and effectively neutralizing the clear and unambiguous terms of those forms. *See Nicholson v. United States,* 29 Fed. Cl. 180, 194 (1993) (citing *4 Samuel Willison, A Treatise on the Law of Contracts,* § 631, at 948 (3d ed.1961)).

■ Plaintiffs argue that the Court must view the agreement between the IRS and the Tokers to encompass not only the terms of the Forms 870–P, but the language of the cover letter Mr. Toker sent with those forms, as well. In that Feb. 21, 1993 letter, Mr. Toker explained that he had already satisfied his 1983 and 1984 liability, and that it had been his understanding that there would be no need for him to sign the Forms 870–P. He claims, however, that he was subsequently informed, during a phone call to the IRS, that his signature would be required "just for the purpose of closing [his] file." (*See* Pl.'s Nov. 6, 1996 Aff. at Ex. 6.) Mr. Toker therefore submitted the signed forms so that the IRS could "close [his] account for the years 1983 and 1984 without any further liability on [his] part." (*Id.*) Even accepting plaintiffs' position that the cover letter must be considered part of the agreement between the Tokers and the IRS, the Court detects no ambiguity in that agreement, and certainly no ambiguity lending any evidentiary support to plaintiffs' interpretation of the agreement as a virtual nullity.

In several places, and in clear terms, it was indicated that plaintiff's signature on the Forms 870–P—if accepted by the IRS—would constitute a final settlement of the claims relating to tax years 1983 and 1984. Specifically, Form 870–P provides that the matter "will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact"; the Notice provides that "the settlement will be binding and will not be affected by any later judicial determination"; and

---

1. Moreover, the Tax Court's decision reflected a stipulation entered into between plaintiffs and the IRS. That stipulation, subsequently adopted as the Tax Court's judgment, permits no ambiguity: "there is a deficiency in income tax due...." The Court is skeptical of plaintiffs' suggestion that there was a separate oral agreement dealing with the same subject matter of the Tax Court's decision that somehow went not reflected in that decision. In any event, under the parol evidence

rule, (*see* Section IIA, supra), plaintiffs cannot now refute the clear terms of that agreement.

2. Defendant does argue that plaintiffs' claims as to these years are time barred. The Court does not reach this issue, however, as it finds that defendants prevail on the question of parol evidence.

section 6224, referenced in the Forms 870–P further confirms that the agreements are "binding." (*See* Def.'s Sept. 18, 1996 Mot. for Dis. of the Compl. at Ex. F.) The February 21 letter, for all of its apparent hedging, embraces this notion by requesting confirmation from the IRS that the Tokers' case would be "clos[ed]" and that Mr. Toker's check would constitute "full" payment. Moreover, Mr. Toker's language concerning the administrative nature of the forms nowhere suggests his supposed intention to reserve rights expressly forfeited pursuant to the terms of the signed Forms 870–P. Mr. Toker may have written his cover letter in the hopes of providing himself a loophole in the event of a subsequent Tax Court decision upholding the Term Associates deductions. If this was his intention, however, the language he chose reveals that Mr. Toker meant to secure this loophole with language subtle enough that it would not draw the attention of the IRS before making its final acceptance of the settlement. Whatever his intentions, Mr. Toker simply failed to introduce any real ambiguity into the plain terms of the agreement he accepted. *See Andersen Consulting v. United States*, 959 F.2d 929, 934 (Fed.Cir. 1992) ("'proposals must be evaluated on the basis of what they contain, not what their author intended that they contain'") (citation omitted).

The Second Circuit has identified additional considerations which contribute to this Court's unwillingness to credit plaintiffs' position. *See Stair v. United States*, 516 F.2d 560, at 565 (2d Cir.1975). The Stair Court cautioned against arming taxpayers "with both a shield and a sword":

> The [plaintiffs], if allowed to proceed, could fare no worse than the compromise they have already succeeded in negotiating. If victorious on the merits, they would be freed from the obligation of sustaining their half of that bargain. Given such a state of affairs, it would be an imprudent taxpayer indeed who did not resort to litigation even after compromise.

*Id.* Plaintiffs struck a compromise with the IRS, pursuant to which they paid certain funds in exchange for the assurance that those funds would be accepted in full satis-

faction of the IRS's claims. In light of subsequent events, plaintiffs may well regret having struck his deal. It is, however, the agreement they reached, in clear terms and without qualification. The Tokers settled with the IRS and the settlement was "Binding" and "not ... affected by any later judicial determination." (Notice[s] of Final Partnership Administrative Adjustment, Def's Sept 18, 1996 Mot. For Dis. Of the Compl. at Ex. F.)

**B. Fraud; Lack of Mutual Assent**

■ Seeking to avoid the obstacles posed by the parol evidence rule, the Tokers argue that they were persuaded to sign the Forms 870–P by fraud, malfeasance, or misrepresentation of fact, on the part of the IRS. Specifically, the Tokers complain that they were misinformed by three IRS employees that the Forms 870–P were purely "administrative" documents, which would have no effect on plaintiffs' substantive rights.

The Tokers have the burden of proving that their agreement with the IRS was secured by fraud, malfeasance, or misrepresentation of fact. *See H. Graphics/Access Ltd. Partnership v. Commissioner of Internal Revenue*, 63 T.C.M. 3148(CCH), 1992 WL 129882 (T.C.1992). Moreover, "analysis of justifiable reliance in fraud cases under New York case law has taken account of the degree to which the truth was accessible to the defrauded person." *Banque Franco–Hellenique De Commerce Int. et Maritime v. Christophides*, 106 F.3d 22, 26–27 (2d Cir. 1997) (citations omitted). "While the law does not require that a defrauded party go to the ends of the earth to discover the falsity of a statement, patent foolishness is not excused." *Id.*

■ If the Tokers were misinformed by IRS personnel as to the effect of the Forms 870–P, they did not need to go the "the ends of the earth" to ascertain the real effect of the Notices and the Forms 870–P themselves. The Tokers could simply have referred to the plain language of those documents. *See Citizens Banking Co. v. McKittrick*, 1991 WL 79153, at *2 (S.D.N.Y. May 6, 1991) (holding that a bank's alleged misrepresentations as to the effect of written instruments "would be ineffective to alter

defendant's obligations under the unambiguous provisions"); *Transnor Ltd. v. BP North America Petroleum,* 736 F.Supp. 511, 519 (S.D.N.Y.1990) ("Transnor's claim that SOMO orally agreed to free destination despite the existence of a specifically negotiated clause in an integrated contract is precisely the type of evidence excluded by the parole evidence rule."); *Brinderson–Newberg Joint Venture v. Pacific Erectors, Inc.,* 971 F.2d 272, 281 (9th Cir.1992) ("For parole evidence of fraud or misrepresentation to be admissible under California law, 'it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise in writing.'") (citations omitted). Put differently, plaintiffs cannot "end-run" the parol evidence rule by alleging that they were advised that the Forms 870–P did not have the effect plainly indicated on their face. *Id.*

Mr. Toker, as an attorney and a judge, demonstrated his mutual assent to a final settlement of his claims by attaching his signature to an agreement that, by its clear terms, was final.[3] *See Mecom v. Commissioner of Internal Revenue,* 101 T.C. 374, 385, 1993 WL 444600 (T.C.1993) ("we look to the objective manifestation of mutual assent as evidenced by the parties overt acts. Petitioner's assent to the terms inscribed in Form 872–A is seen clearly by his signature on the Form 872–A.") (citations omitted). He cannot now avoid the consequences of his decision by proclaiming his reliance upon dubious advice he allegedly received in connection with the processing of his forms.

■ Mr. Toker's effort to estop the IRS on the basis of the alleged misstatements of the agency's employees is further complicated by the unique considerations bearing upon estoppel of government bodies. Indeed, "it is well settled that the government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health*

*Servs.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Mr. Toker can allege only that he was misinformed by certain IRS personnel; Mr. Toker is left only to speculate that supervisors intentionally misled him with respect to the Forms 870–P that he executed. This is not enough. *See Miller v. United States,* 949 F.2d 708, 712 (4th Cir. 1991) ("it is clear that neither the government, nor a government agency such as the IRS, can be equitably estopped from asserting its legal rights because of the actions of an agent."). The IRS cannot be estopped on the basis of negligent guidance provided by various of its nonsupervisory personnel. *Id.* This is the most severe inference against the agency that the Tokers' evidence permits.

In sum, the Tokers accepted a "binding" settlement of their claims pertaining to tax years 1983 and 1984, and agreed that their entitlement to any claimed deductions would "not be affected by any later judicial determination." (See Def's Sept. 18, 1996 Mot. for Dis. of the Compl. at Ex. F.) They are now bound by the unambiguous terms of the agreement that they struck, and their claims must be dismissed.

## CONCLUSION

For the above reasons, the Court grants defendant's Motion for Summary Judgment for the tax years 1982, 1983, and 1984. The Clerk of the Court is directed to enter judgment in defendant's favor, dismissing the Complaint in its entirety.

**SO ORDERED.**

---

**3.** Alfred Toker's February 21, 1990 letter is written on Civil Court of the City of New York stationary, signed by Alfred Toker, and is captioned on the left, "Chambers of Alfred Toker,

Judge." (Pl.'s Nov. 6, 1996 Aff. at Ex. 6.) The September 2, 1988 letter to the IRS, (*see id.* at Ex. 4), lists Alfred Toker as a name partner in a law firm.