**UNITED STATES of America, Plaintiff,**

v.

**Sheldon G. HANSEL, Christy Hansel, Grant Hansel, Shelley Hansel and Eunice Hansel, Defendants.**

**No. 96–CV–775.**

United States District Court,
N.D. New York.

March 14, 1998.

Thomas J. Maroney, U.S. Atty. for Northern District of New York, Albany, NY, for plaintiff; Glenn J. Melcher, Trial Attorney, Tax Div., Washington, DC, of counsel.

Sheldon G. Hansel, West Winfield, NY, pro se.

Christy Hansel, Shell, WY, pro se.

Grant Hansel, Burlington, VT, pro se.

Shelley Hansel, Niagara Falls, NY, pro se.

Eunice Hansel, West Winfield, NY pro se.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff United States ("the Government") brought this action, pursuant to 26 U.S.C. §§ 7401 and 7403, to: 1) reduce to judgment tax assessments made against Sheldon G. Hansel; 2) set aside fraudulent transfers by Sheldon G. Hansel to the other four named defendants; and 3) obtain judgments against Christy Hansel, Grant Hansel, Shelley Hansel and Eunice Hansel in amounts equal to the value of certain shares of stock conveyed to them, plus dividends, profits, and increases in value of the stock.

The Government now moves: (1) to amend the Complaint to add Hope Hansel as a defendant; and (2) for summary judgment.

## I. Background

### A. Facts

The following facts are set forth in the Government's Local Rule 7.1(f) Statement, which defendants do not dispute. *See* N.D.N.Y.L.R. 7.1(f) ("All material facts set forth in the statement served by the moving party shall be deemed admitted unless controverted by the statement served by the opposing party."). In 1983, the Internal Revenue Service ("IRS") began an examina-

tion of the federal income tax liabilities of Sheldon and Hope Hansel for the tax years 1980 and 1981. In connection with this investigation, Sheldon and Hope signed a form 872, "Consent to Extend the Time to Assess Tax." Govt. Ex. 1. The consent, signed December 17, 1983, provided that the amount of any federal income tax due on any of Sheldon or Hope's returns for the tax year 1980 may be assessed at any time before December 31, 1984.

On June 25, 1985, the IRS sent Sheldon and Hope a Notice of Deficiency for the 1980 and 1981 tax years, alleging deficiencies of $70,691.00 for 1980 and $86,603.00 for 1981. Govt. Ex. 4 at 2. The IRS also assessed interest and penalties on the deficiencies. *Id.* On September 23, 1985, Sheldon and Hope filed a petition with the United States Tax Court for a redetermination of the tax liabilities set forth in the Notice of Deficiency. Govt. Ex. 5. The Tax Court rendered its decision January 23, 1991, determining deficiencies as to Sheldon Hansel of $20,909.00 for 1980 and $53,030 .00 for 1981. Govt. Ex. 6. The Tax Court determined no deficiencies as to Hope Hansel.

In accordance with the Tax Court's decision, the IRS on March 8, 1991 assessed audit deficiencies against Sheldon Hansel of $73,939.00 plus interest and penalties, bringing the total assessment to $222,007.21. Govt. Exs. 7–8.

In April of 1984, Sheldon and Hope incorporated Hanwinsel Farms, Inc. ("Hanwinsel"), naming themselves and Kent Hansel as directors. See Govt. Exs. 9–10. Soon thereafter, Sheldon and Hope transferred their interest in their farm (including their land, residence and chattel) to Hanwinsel, each receiving half of Hanwinsel's stock (100 shares) in return. Sheldon Hansel Dep. at 10–11; Hope Hansel Dep. at 4–5.

Sheldon Hansel later transferred all of his Hanwinsel stock to his children, Christy, Grant and Shelley, and his mother Eunice. Christy was born in 1973, Grant in 1975 and Shelley in 1978. On January 2, 1987, Sheldon transferred 15 shares of Hanwinsel stock each to Christy, Grant and Shelley. Sheldon Hansel Dep. at 65, 69–70; Govt. Ex. 13. On

October 5, 1989, Sheldon transferred 25 shares of Hanwinsel stock to Eunice, and 10 shares each to Christy, Grant and Shelley. *Id.* Sheldon testified at his deposition that the only consideration he received in return from the children was their labor. Sheldon Hansel Dep. at 69. He further testified he gave his mother the stock in repayment of a debt, the amount of which he could recall only as being "under $40,000." *Id.* at 71.. At the time of the 1987 and 1989 transfers, Sheldon Hansel's personal assets, in his estimation, totaled no more than $25,000–30,000. *Id.* at 15–21.

On January 25, 1995, Eunice transferred 8 shares of Hanwinsel stock each to Christy, Grant and Shelley, and one share to Hope. Govt. Ex. 13. Eunice received nothing from her grandchildren or daughter-in-law in consideration for the stock.. Christy Hansel Dep. at 26–27; Grant Hansel Dep. at 30–34; Shelley Hansel Dep. at 7.

## B. Procedural History

The Government commenced this action in June of 1996 seeking: (1) a judgment against Sheldon Hansel for assessed federal income tax liabilities for the years 1980 and 1981 in the amount $222,007.21 plus interest; (2) a declaration that federal tax liens have attached to all of Sheldon Hansel's property and rights to property, including the Hanwinsel stock; (3) foreclosure of the outstanding tax liens that have attached to the Hanwinsel stock and distribution of the proceeds to the Government to be applied toward satisfaction of Sheldon's tax liabilities; and (4) a judgment against Eunice, Christy, Grant and Shelley Hansel, in an amount equal to the fair market value of the Hanwinsel stock conveyed to them, plus dividends, profits and increases in value of the shares of stock conveyed, minus the amount ultimately recovered by the Government from the foreclosure and sale of the stock.

Defendants moved to dismiss the Complaint in February of 1997. In that motion, defendants averred Eunice Hansel died in 1995. The motion was denied by decision and order entered April 11, 1997, and the Court granted the Government leave to substitute Eunice Hansel's executor within 90 days. It did not do so. Accordingly, this action is dismissed in its entirety against Eunice Hansel.

The Government now moves to amend the Complaint to add Hope Hansel as a defendant, and for summary judgment against the current defendants.

## II. Discussion

### A. The Government's Motion to Amend

■ Rule 15(a) generally governs the amendment of complaints, but in the case of proposed amendments where new defendants are to be added, Rule 21 governs. *Joseph v. House,* 353 F.Supp. 367, 371 (E.D.Va.), *aff'd,* 482 F.2d 575 (4th Cir.1973); *Pacific Gas & Elec. Co. v. Fibreboard Products, Inc.,* 116 F.Supp. 377, 382–83 (N.D.Cal.1953). Rule 21 states that a party may be added to an action "at any stage of the action and on such terms as are just." Addition of parties under Rule 21 is guided by the same liberal standard as a motion to amend under Rule 15. *Fair Housing Development Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y.1972). Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *United States v. Commercial Bank of North America,* 31 F.R.D. 133, 135 (S.D.N.Y.1962) (internal quotations omitted). Furthermore, Rule 21 must be read in conjunction with Rules 18, 19 and 20. *Id.* 31 F.R.D. at 135.

■ Rule 20 states that "[a]ll persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction or occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a). The Government bases its motion to add Hope Hansel as a defendant on two grounds: (1) that because of Eunice's transfer of one share of stock to Hope, Hope claims an interest in the property against which the Government seeks to enforce its tax lien; and (2) the Government seeks a judgment against

Hope as a fraudulent transferee of Hanwinsel stock from Eunice Hansel.

■ On these bases, the amendment will be allowed. The Government avers, and defendants do not dispute, that it became aware of the one-share transfer from Eunice to Hope only after Hope's deposition on November 19, 1997. Though the Government waited until January 30, 1998 to make the present motion, nothing the in the record indicates bad faith or intentional delay. " 'Mere delay ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.' " *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993) (quoting *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981)).

Moreover, neither the current defendants nor Hope Hansel herself will be prejudiced by the amendment. She obviously has been well aware of both the existence and the subject matter of this litigation since it outset. The Government already has taken her deposition. Furthermore, once the Government properly serves Hope Hansel, she will have an opportunity to respond to the allegations in the Complaint, and the Court will be receptive to any arguments of merit she may have in favor of any discovery she may need.

Defendants argue that the Government's allegations of fraudulent transfer are flawed. That general contention is discussed in detail *infra.*

For all of the foregoing reasons, the Government's motion to amend the Complaint to add Hope Hansel as a defendant is GRANTED, and the Government is directed to serve a summons and Complaint on her within 30 days of receipt of this order.

## B. The Government's Motion for Summary Judgment

### 1. Standard for Summary Judgment

The Government next moves for summary judgment against all current defendants. Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. *Heyman v. Commerce and Indus. Ins. Co,.* 524 F.2d 1317 (2d Cir.1975).

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. *Matsushita,* 475 U.S. at 585–86. A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is proper when reasonable minds could not differ as to the import of the evidence. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & Hudson R. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita,* 475 U.S. at 586).

The Court turns to the Government's motion for summary judgment with this standard in mind.

### 2. Judgment Against Sheldon Hansel on Unpaid Tax Liabilities

■ Sheldon Hansel is foreclosed by the January 1991 decision of the U.S. Tax Court from contesting the issue of his 1980 and 1981 tax liability. "[I]f a claim of liability or non-liability relating to a particular year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year." *Commissioner of Internal Rev. Ser. v. Sunnen,* 333 U.S. 591, 598–99, 68 S.Ct. 715, 92 L.Ed. 898 (1948). This holds true even where, as appears here, the initial judgment is based on an agreement between the parties in the action before the Tax Court. *See United States v. International Bldg. Co.,* 345

U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182 (1953).[1] Sheldon Hansel's liability as to the 1980 and 1981 deficiencies is thus established as a matter of law, and the Court will not revisit it here. *See Toker v. United States,* 982 F.Supp. 197, 201 (S.D.N.Y.), *aff'd,* 133 F.3d 908, 1997 WL 796151 (2d Cir.1997).[2]

Accordingly, the Court grants the Government's motion for summary judgment against Sheldon Hansel. Judgment will be entered against him in the amount of $222,007.21, plus interest.

### 3. Fraudulent Conveyances

 The liability of a transferee of assets for taxes owed by the transferor under a theory of fraudulent conveyance is governed by state law.[3] *See United States v. McCombs,* 30 F.3d 310, 323 (2d Cir.1994); *Ginsberg v. Commissioner of Internal Revenue,* 305 F.2d 664, 667 (2d Cir.1962); *United States v. Poio,* 1986 WL 31983, at *2 (E.D.N.Y.); *United States v. Scharfman,* 1981 WL 1855, at *5 n. 12 (S.D.N.Y.); *United States v. Altmark,* 331 F.Supp. 1346, 1347 (E.D.N.Y.1971). Under New York law,

> [e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y. DEBT. & CRED. L. § 273 (McKinney 1990). Generally speaking, the party challenging the conveyance has the burden of proving both insolvency and the lack of fair consideration. *American Investment Bank, N.A. v. Marine Midland Bank, N.A.,* 191

A.D.2d 690, 595 N.Y.S.2d 537, 538 (2d Dep't 1993). In cases of intra-family transfers where facts concerning the *nature* of the consideration are within the exclusive control of the transferee, however, the defendant has the burden of proving the adequacy of consideration. *See McCombs,* 30 F.3d at 323; *Interpool Ltd. v. Patterson,* 890 F.Supp. 259, 265 (S.D.N.Y.1995); *ACLI Government Securities, Inc. v. Rhoades,* 653 F.Supp. 1388, 1391 (S.D.N.Y.1987), *aff'd,* 842 F.2d 1287 (2d Cir.1988); *Scharfman,* 1981 WL 1855, at *6. Moreover, if the conveyance is found lacking in consideration, the defendant will have the burden of proving solvency. *United States v. Red Stripe, Inc.,* 792 F.Supp. 1338, 1342 (E.D.N.Y.1992); *ACLI Government Securities, Inc.,* 653 F.Supp. at 1393.

### a. Fair Consideration

 The Government points to the absence of any consideration for any of the 1987 or 1989 transfers. As to the transfers to his children, Sheldon Hansel testified (as did the children themselves) he gave them the stock in return for their labor. At the time of the transfers, the children were 14, 12 and 9 (1987) and 16, 14 and 11 (1989). The "labor" in question was the chores the children performed on the farm, during a time when all three also were attending school. Christy Hansel Dep. at 10–11; Grant Hansel Dep. at 18–19; Shelley Hansel Dep. at 4–5, 12.

"Fair consideration" under the Debtor and Creditor Law is given for property or an obligation

> a. When in exchange for such property, or obligation, as a fair equivalent therefor,

1. Though the Government provides only the "decision" of the Tax Court entered pursuant to the parties' agreement, such a decision is deemed a final judgment on the merits. *See United States v. Wynshaw,* 516 F.Supp. 785, 788 (S.D.N.Y. 1981) (citing *International Building Co.,* 345 U.S. at 506; *Stetson v. United States,* 1977 WL 1242 (W.D.N.Y.); *Sylk v. United States,* 331 F.Supp. 661, 666 (E.D.Pa.1971)).

2. This discussion also answers Sheldon's contention that the Government's 1985 assessments were filed beyond the three-year statute of limitations. *See* 26 U.S.C. § 6501(a). Sheldon in fact raised this defense in the Tax Court, and is

foreclosed by the Tax Court's determination from raising it now. *See United States v. Cohn,* 682 F.Supp. 209, 222–23 (S.D.N.Y.1988); *United States v. Spohrer,* 1976 WL 1107, at *2 (M.D.Fla.).

3. One element of state law that does not apply is the statute of limitations. "The United States is not subject to any statute of limitations in enforcing its rights, unless Congress specifically provides otherwise." *United States v. Podell,* 572 F.2d 31, 35 n. 7 (2d Cir.1978) (citing *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940)).

and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. DEBT. & CRED. L. § 272 (McKinney 1990). Whether the children's services may be considered an "antecedent debt" within the meaning of § 272 depends on whether Sheldon Hansel made an implied or constructive promise to pay them for those services. *See Scharfman,* 1981 WL 1855, at *6.

Contrary to defendants' assertions, it has long been established in New York that a parent has a *right* to the services of his or her children. *See Doyle v. Rochester Times–Union,* 232 A.D. 878, 249 N.Y.S. 30 (4th Dep't 1931); *Schonberger v. Culbertson,* 231 A.D. 257, 247 N.Y.S. 180 (1st Dep't 1931); *Lahann v. Cravotta,* 228 N.Y.S.2d 371, 372 (Sup.Ct.1962) *Pokeda v. Nash,* 47 N.Y.S.2d 954 (Sup.Ct.1944). Thus, the fact that the Hansel children performed services on the farm is no evidence of any implied promise of Sheldon Hansel to pay them for those services.

The general rule can, of course, be altered by an agreement between the parent and child. *Cf. Scheller v. Bowery Savings Bank,* 217 A.D.2d 506, 630 N.Y.S.2d 62, 63 (1st Dep't 1995) (general rule that parent has legal right to possession of child's funds may be varied by private arrangement). Defendants, however, provide no evidence of any such agreement, nor any evidence that the stock was given to the children in satisfaction of *any* "antecedent debt." *See Scharfman,* 1981 WL 1855, at *6. Defendants therefore have failed to carry their burden to show fair consideration was given in exchange for the stock.

As for the 25 shares transferred in 1989 by Sheldon to Eunice Hansel allegedly in repayment of a debt, defendants offer no evidence of any such debt. Moreover, the evidence in the record (a 1985 Farm and Home plan loan application) indicates that the only indebtedness Sheldon had to his mother was for $3,950, which was repaid in 1987. See Pl.Ex. 17. A similar application submitted under Sheldon's name in 1988 lists no indebtedness to Eunice Hansel. See Pl. Ex. 18. Defendants thus have failed to establish this transfer was in payment of any antecedent debt.

Lastly, the children themselves concede they gave their grandmother nothing in return for the 1995 transfers. Christy Hansel Dep. at 26–27; Grant Hansel Dep. at 30–34; Shelley Hansel Dep. at 7.

In sum, defendants have failed to carry their burden to show fair consideration was given for any of the conveyances at issue.

**b. Solvency**

Defendants also fail to raise a factual issue as to whether Sheldon Hansel was solvent after the transfers. The Debtor and Creditor Law defines insolvency as follows:

A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

N.Y. DEBT. & CRED. L. § 271(1) (McKinney 1990). Sheldon estimated the value of his assets after the creation of the farm corporation at approximately $10,000. Sheldon Hansel Dep. at 16. The only specific asset of value to which he could testify owning thereafter was a 1/3 interest in a house in Vermont that was sold (after the farm corporation was created) for approximately $30,000 to $35,000. *Id.* at 18–19. At the time of his deposition, he estimated the value of his assets at $15,000. *Id.* at 20.

Defendants provide no evidence on this motion of any other assets Sheldon Hansel owned or had an interest in during the relevant period.

As to liabilities, "in determining whether the person was insolvent, his federal tax liability, including penalties and interest, even if unknown at the time of the transfer, must be taken into account." *United States v. Digiulio,* 1997 WL 834820, at *9 n. 8 (W.D.N.Y.) (citing *United States v. 58th St. Plaza Theatre, Inc.,* 287 F.Supp. 475, 500–01 (S.D.N.Y.1968)). For purposes of a fraudu-

lent conveyance under § 273, the tax liability need only have accrued at the time of the transfer. *Id.* (citing *United States v. Red Stripe, Inc.,* 792 F.Supp. at 1342). The Tax Court's 1991 decision makes clear Sheldon Hansel was liable for 1980 and 1981 income taxes in the amount of $73,939.00. Thus, by the time Sheldon transferred the remainder of his Hanwinsel stock in 1989, leaving him with no more than $30,000 worth of assets, those assets were far exceeded by his existing tax liabilities.

Sheldon thus was rendered insolvent by the conveyances, and received no fair consideration therefor. Accordingly, there is no genuine issue of fact as to any of the elements of § 273. The conveyances were therefore fraudulent under New York law, and the Government is entitled to summary judgment against the transferees.

## III. Conclusion

For all of the foregoing reasons, the Government's motion to amend the Complaint to add Hope Hansel as a defendant is GRANTED. The Government's motion for summary judgment against Sheldon, Christy, Grant and Shelley Hansel also is GRANTED. The Government is hereby directed to submit an appropriate order, within twenty days of the date of this decision, upon which judgment may be entered.

**IT IS SO ORDERED.**